SUMMERS, Justice.
This is an appeal from the conviction of Joel Thomas Prickett, Jr., on a charge that he murdered Thomas Dufrene, Sr. on August 15, 1972. He was sentenced to imprisonment at hard labor for life. Seven bills of exceptions were reserved; four are relied upon for reversal of the conviction and sentence on this appeal.
I.
Prior to trial, on May 3, 1973, defendant filed a motion to suppress for use as evidence a .22 caliber rifle in the possession of the State on the ground that it was obtained by an unconstitutional search and seizure. It is alleged that the arresting officers, who seized the gun in connection with the arrest of the defendant, had no warrant, and they were not authorized to arrest the defendant without a warrant on a vessel in a navigable body of water, the Mississippi River.
At the hearing on the motion to suppress, defense counsel filed in evidence in support thereof the testimony taken at a preliminary hearing held on September 21, 1973. On this record, we learn that Officers Doucet and Mangano of the Jefferson Parish Police Department received a call at 6:26 on the morning of August 15, 1972 to investigate an aggravated battery by shooting on the levee at Barataría Blvd. and River Road. Upon arrival Steven McKean approached the police vehicle exclaiming, “Mr. Tommy was shot.” He then pointed to the victim, Thomas Du-frene, sitting on the levee. Thomas Du-frene, Jr., the victim’s son, present at the scene, corroborated these facts. When they approached him, Dufrene declared that the man running towards the boat shot him.
The officers called an ambulance. Another police unit arrived on the scene at that time manned by Officers Vedros and Becker. While one of the police remained with Dufrene, the others proceeded toward the boat. As they did so, Steven McKean *511 pointed to the defendant saying, “That’s the man who shot him.” The officers then boarded a nearby tugboat moored to a barge at the riverbank as it started to drift away. Defendant was arrested there as he emerged from the engine room. It was necessary to subdue and handcuff him. At this time the officers found the .22 caliber rifle in plain view in the tugboat engine room.
In our view this is a classic case of probable cause to arrest, and to seize a weapon seemingly used in the shooting.
This bill has no merit.
II.
Defendant reserved a bill of exceptions to the trial court’s ruling that a proper identification and chain of custody had been established to permit the State to introduce into evidence a .22 caliber rifle seized as an incident to the arrest of the defendant.
To support the introduction of the rifle into evidence, the State called Arthur F. Fields, Jr., the evidence clerk in the office of the clerk of court. His duties are to receive evidence and store it in the vault in the evidence room. He testified he received from deputies Becker and Vedros a blue short sleeve shirt and a .22 caliber rifle on August 16, 1972. The objects were taken out on September 19, 1972 by technician Ripp, a deputy sheriff with the ballistic crime lab, and returned by him to Fields on January 5, 1973. Since that time the rifle remained in Fields’ custody until the date of trial.
Cross examination of Fields disclosed that four sets of keys existed to the evidence vault, held respectively by the clerk of court, a supervisor in that office, a coworker, and by Fields. Fields also performed other duties. During office hours the vault and the room leading to it were closed, but general access was blocked by a counter at which Fields and Dumaine presided.
Ripp testified that he received the rifle from Fields to run a ballistic test on it. He turned it over to deputy sheriff Guillot on September 17, 1972, who returned it on December 27, 1972. Thereafter, Ripp delivered it to the clerk’s office. Ripp identified the rifle in court as the identical gun he handled and testified that the rifle was in substantially the same condition as when it was seized. In State v. Dotson, 260 La. 471, 256 So.2d 594 (1972) we announced the following standards to be applicable to the identification of demonstrative evidence :
In order to admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also 'be identified by establishing a chain of custody, that is, by proof of custody of the object from the time it was seized to the time it was offered in evidence. It is not required that evidence of custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient.
The lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury.
On the facts recited, the standards announced in State v. Dotson are satisfied. This bill has no merit.
III.
The issue considered here is raised by a bill reserved to the denial of a motion for a mistrial.
During the course of the trial, and after the State had introduced the .22 caliber rifle into evidence, the assistant district attorney announced to the court, out of the *512 presence of the jury, that the State had just received a report from the crime lab that they were unable to establish by the tests performed that the bullet found in the victim was fired from the rifle previously introduced into evidence. He further stated that the attempt to ballistically identify the rifle was inconclusive because the gun was damaged. The assistant district attorney further stated that, although no evidence had been presented by the State that the rifle actually killed the victim, his office felt it was necessary to come forward with the report from the crime lab. Accordingly, the report was introduced into evidence. No objection was interposed to the introduction of the report by the defense.
Counsel for the defense did, however, move at this time for a mistrial. The motion is based upon the authority of that portion of Article 775 of the Code of Criminal Procedure which prescribes that a mistrial may be ordered when “There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law; .” On this authority the argument was made that a “legal defect in the proceedings” occurred when the rifle was introduced into evidence and the crime lab report later revealed that it could not be established that the bullet found in the victim was fired from that rifle. It was argued, also, that displaying the gun to the jury was prejudicial.
When this motion and argument was made, the assistant district attorney stated that the State would have no objection to the removal of the rifle from the jury’s view during the remainder of the trial. He suggested further that the defense show the report to the jury and question the expert who made the test. Whereupon the motion for a mistrial was denied, a bill was reserved, and the trial judge ordered the rifle removed from the courtroom.
Because the report of the crime lab disclosed the results of a test which would tend to support the defendant’s case, it was proper for the State to make full disclosure thereof. To fail to do so would subject the prosecution to a charge that it suppressed evidence favorable to an accused. See e. g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
At the oral argument on appeal, this Court gained the impression that the gun was withdrawn from evidence by the trial judge. This was not the case. The record reveals that the trial judge, at the suggestion of the State’s attorney, and without defense objection, merely ordered the gun withdrawn from the courtroom in order that the jury could no longer see it.
No error resulted from this action. The withdrawal was designed to minimize prejudice to the defendant, notwithstanding that the rifle had been properly introduced into evidence. In closing argument the State’s attorney informed the jury that the ballistic tests did not establish that the rifle in evidence fired the shot which led to the victim’s death.
A substantial amount of testimony supported the ruling of the trial judge admitting the rifle into evidence. Eyewitnesses saw the shooting, a physician removed a .22 caliber pellet from the victim, and the gun was found in the tugboat where the defendant was arrested. Thus, relevancy was established, the weight of the evidence was a question for the jury.
This bill has no merit.
IV.
A motion for a new trial based upon the improper admission of the rifle into evidence was denied and a bill of exceptions was reserved to the ruling. The motion is founded upon the arguments considered in Parts I and II, and our disposition there is controlling on this motion.
While arguing the motion, defense counsel referred to a package the State’s attor *513 ney kept in a chair during the trial, although the contents were never introduced into evidence. This, he believed, contained the victim’s shirt to which the State’s attorney referred in closing argument. In explanation of what occurred, the State’s attorney said that in his oral argument he told the jury that he had not referred to the gun or the shirt although the shirt was referred to by Fields, the evidence clerk, as having been received by him as evidence in the case.
No error is apparent from these arguments. In any event, no testimony with respect to the shirt was offered in support of the motion. The bill reserved has no merit.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., dissents and assigns reasons.
BARHAM, J., dissents with reasons.