373 So.2d 133 (1979)
STATE of Louisiana
v.
Eli J. GUILLORY.
No. 63578.
Supreme Court of Louisiana.
June 25, 1979.
Rehearing Denied July 27, 1979.
*134 Kenneth O. Privat, Privat & Regan, Crowley, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Jack Derrick Miller, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Chief Justice.
The grand jury of Acadia Parish indicted Eli J. Guillory for the May 25, 1977 second degree murder of Harriet St. Andrée, a crime defined by Article 30.1 of the Criminal Code. After trial by jury Guillory was found guilty and sentenced to imprisonment for life without suspension of sentence, parole or probation for forty years. Five assignments of error are argued on this appeal.
On May 25, 1977 defendant Guillory and his half-brother Michael Brown[1] had been drinking heavily. They purchased a supply of .22 caliber cartridges and with a pistol owned by Guillory they fired several rounds near a bridge on the outskirts of the city of Crowley.
About 7:30 that evening Guillory and Brown stopped at the rural mobile residence of Harriet St. André, a distant cousin of Brown's, and sounded the car horn for ice to cool the drinks they were having. When the St. André woman came to the car, Brown forced her into the back seat at the point of Guillory's .22 caliber pistol. Thereafter they forced her to have oral and vaginal sex with them. Guillory finally shot her three times in the head, and they left her nude body on a small bridge on a rural road in Acadia Parish.
Assignment 1: In his opening statement explaining the charge the prosecutor stated that Guillory killed the victim during the perpetration of an aggravated rape. Defense counsel objected to what he considered to be a reference to another crime. He argued that the charge against Guillory made no mention of aggravated rape, merely that he committed second degree murder of Harriet St. André. He moved for a mistrial, relying upon Article 770(2) of the Code of Criminal Procedure, which mandates a mistrial when the district attorney refers to "[a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." The motion for a mistrial was denied. The ruling is assigned as error. The ruling was correct.
Evidence of aggravated rape, which may ordinarily be considered as a crime separate from second degree murder, assumes a different classification in this context and is admissible in this case as an essential element of the crime of second degree murder. Article 30.1 of the Criminal Code, in effect on May 25, 1977, has the effect of giving aggravated rape that status:
"Second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill . .."
There is therefore no merit to this defense contention. If defense counsel is complaining that he did not know aggravated rape was an element of this offense, a bill of particulars was obtainable to acquire this information. La.Code of Crim.Pro. arts. 480, 484-485.
Assignment 2: Over a defense objection, the trial judge allowed the State to introduce a series of four photographs depicting the victim, a black woman, lying naked on the bridge in what may be a pool of blood. The photographs are in black and white. What appears to be a bullet wound on the victim's forehead is seen on some of the photographs.
*135 While the photographs are indeed sordid and undoubtedly did evoke compassion for the victim, this effect does not outweigh their probative value. These photographs prove the corpus delicti, and the victim's nude and wounded body corroborates the State's theory that an aggravated rape was perpetrated in connection with the killing, important elements of the crime charged. They were therefore relevant and admissible. State v. Matthews, 354 So.2d 552 (La.1978).
Assignment 3: Prior to trial the State notified the defendant that the State intended to introduce confessions or inculpatory statements of Guillory, copies of which had been furnished to the accused or were attached to the notice. Only two of these statements are involved here, one given on May 26, 1977 in which defendant denied any implication in the offense, and one given May 28, 1977 wherein he admitted raping and shooting the victim.
The May 28, 1977 inculpatory statement was introduced by the State. When defendant sought to establish the existence of the May 26, 1977 statement and introduce it into evidence, the State objected and the trial judge sustained the objection. The ruling is assigned as error.
The defendant first contends that to permit the State to choose one of the statements for introduction and not the other, which it has notified the defendant it will introduce, is erroneous.
In State v. Smith, 339 So.2d 829 (La. 1976), this Court held that the State is not bound, after an Article 768 notice,[2] to introduce the confession or statement.
It is also argued by the defense that to introduce one of the contested statements and not the other is contrary to Section 450 of Title 15 of the Revised Statutes requiring that if a confession is used against a defendant it must be used in its entirety. The rule enunciated by that statute applies only to declarations made at one time or those having some connection with one another. State v. Cardinale, 251 La. 827, 206 So.2d 510 (1968). Here we find no connection whatever between the statements in question. They were not made at the same time and their content is entirely different. State v. Gunter, 30 La.Ann. 536 (1878). One springs from a motive of self-interest and is exculpatory, while the other is a confession inculpating the defendant, an exactly opposite and different statement. State v. Johnson, 35 La.Ann. 968 (1883). See also State v. Rutledge, 37 La. Ann. 378 (1885).
There is, moreover, another sound reason for not permitting the defendant to introduce his pretrial self-serving exculpatory statement. By doing so he would, in effect, bring his statements before the jury without subjecting himself to cross-examination.
This assignment is without merit.
Assignment 4: Defendant contends that the trial court erred in allowing the introduction of a statement made after he had been administered a voice stress analyzer test.
The test was administered to defendant two days before he gave the statement of May 28, 1977 and confessed to the shooting and rape. Although the deputy who administered the voice stress analyzer test did not give the Miranda warnings to defendant, he did read a statement to defendant to the effect that he was taking the test voluntarily, which defendant signed. Defendant was never given information concerning the results of the test which would influence him to confess.
Two days after the test was administered, defendant was advised of his rights and the predicate for the introduction of the confession was to the effect that the confession was free and voluntary. At no time were the results of the test used to induce defendant to confess. The contention here is without merit.
*136 Assignment 5: After a state witness was examined by the prosecutor and cross-examined by the defense during the State's presentation of its case, the defense later recalled the witness and attempted to examine him as under cross-examination when Guillory's defense was being presented. The trial judge refused to permit the witness to be recalled and examined by defense counsel except as a defense witness. Defendant argues this ruling denied him the right to confront and cross-examine the witnesses against him. La.Const. art. 1, § 16.
Once a witness has been examined and cross-examined as a state witness, the right of the defendant to recall the witness in the presentation of his defense is subject to the limitation that the recall places the witness in the position as though he had never been called before in the case. He then becomes a defense witness. See State v. Banks, 362 So.2d 540 (La.1978); State v. Frizzell, 273 So.2d 831 (La.1973).
The right to recall a witness for further cross-examination under this rule is only varied in the exercise of the sound discretion of the trial judge. State v. Simmons, 340 So.2d 1357 (La.1976). There is no abuse of that discretion here.
The witness involved was the husband of the victim. He was recalled by defense counsel without having reserved the right during the State's case in chief to recall the witness under cross-examination and without announcing that he was being recalled on cross-examination. The prosecutor was unaware that the witness was under cross-examination by defense counsel because his entire testimony on recall was consistent with his testimony as a witness for the State. It was not until defense counsel sought to impeach the witness that an objection was made. The objection was based upon the rule that one may not impeach his own witness unless taken by surprise or upon a showing of hostility, and then the impeachment is limited to prior inconsistent statements. La.Rev.Stat. 15:487, 488. None of these conditions were present here and defendant was properly denied the right to impeach his own witness.
For the reasons assigned the conviction and sentence are affirmed.
DENNIS, J., concurs.
CALOGERO, J., dissents. A/E # 3 has merit.
TATE, J., dissents and assigns reasons.
TATE, Justice, dissenting.
I respectfully dissent. Assignment 3 presents reversible error.

I
Before the state may introduce a defendant's confession, it must establish as a predicate before the jury that, beyond a reasonable doubt, the confession was free and voluntary. La.C.Cr.P. art. 703B, C; La.R.S. 15:451; State v. McGraw, 366 So.2d 1278 (La.1979). Further, confessions must be used in their entirety "so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford." La.R.S. 15:450.
The defendant had given the police two statements: one of May 26, 1977, denying any implication in the offense, and explaining his (innocent) connection with the gun used in the crime; and one on May 28, 1977, wherein he admitted the crime.
The state produced evidence that the later (inculpatory) confession of May 28 was free and voluntary. When the defendant attempted to question the deputy sheriff as to the earlier (exculpatory) confession of May 26, the state objected, and it further objected to admissibility of this confession itself.
In my opinion, this was erroneous and undoubtedly unfair. While strictly speaking not a "part" of the May 28 inculpatory confession, the earlier May 26 statement was closely connected with it, and it should have been admissible on the issue of whether the May 28 confession was truly voluntary and true: The jury should have had the opportunity to evaluate the voluntariness and truthfulness of the last of a series *137 of confessions obtained from the accused, in the light of the discrepancies between it and earlier confessions obtained during the continuous course of interrogation of the accused.
Just as prior inconsistent statements may be used to impeach testimony of a witness on the stand, La.R.S. 15:493, so prior inconsistent confessions are relevant as to the truthfulness (and voluntariness) of the present or latest one. Certainly, had the state itself sought to introduce the earlier confessions, the court would properly overrule a defense objection that the earlier confession was irrelevant or immaterial as evidence of going to the truthfulness and voluntariness of the latest one.
I therefore believe it was fundamentally unfair, as well as legally incorrect, to deny the accused an opportunity to show the contents of the earlier confessions obtained during the course of interrogation of him by the state. Insofar as the accused was prevented from doing so by state objection during the predicate before the jury to establish the voluntariness of the confession offered in evidence by the state, the accused was denied his statutory and constitutional right to disprove the voluntariness and truthfulness of the confession tendered by the state.
The jury was entitled to weigh the circumstances reflected thereby, for it "to determine the weight to be given to it," La.C. Cr.P. art. 703 B, when the later confession was admitted into evidence.

II
However, it must be admitted that the record is somewhat ambiguous in disclosing the issue presented, due to an untranscribed bench conference at the time the issue arose during the predicate before the jury. Tr. Vol. III, p. 292.
Because of the manner in which this issue was raised by defense counsel at the time, the majority may not have addressed the question whether the May 26 statement should have been admitted as part of the predicate as to the truthfulness and voluntariness of the May 28 confession.
The state laid the predicate for and introduced the May 28 confession in conjunction with the testimony of Deputy Robbins, one of the officers who took the May 28 confession. (Tr. Vol. III, pp. 283-303.)
Prior to this time, during the cross-examination on a merit-issue of Detective Goss (one of the officers who had investigated the murder and the officer to whom the (exculpatory) May 26 statement was given by the defendant), defense counsel attempted to elicit testimony before the jury of the fact that a statement had been given on May 26. The state objected and, out of the presence of the jury, the defense counsel argued that he was laying the foundation for later introduction of the (exculpatory) May 26 statement because the fact of the May 26 statement was relevant to the voluntariness of the later (May 28) confession. Tr. Vol. II, pp. 111, 118, and 127.
The trial court ruled that the defendant must, out of the presence of the jury, establish the admissibility of the May 26 statement. After defense counsel had cross-examined Deputy Goss about the May 26 statement, the court ultimately ruled that the May 26 statement was inadmissible because it was a self-serving declaration and because it was hearsay. Tr. II, pp. 122, 127.
Later, during the state's predicate before the jury to establish the voluntariness of the (in culpatory) May 28 confession, the defendant again attempted to show that an earlier (the ex culpatory) May 26 confession had been given. Tr. Vol. III, pp. 291-296. Following an untranscribed bench conference, defense counsel did not persist in this effort, apparently prohibited by the earlier ruling that the (earlier) May 26 confession was inadmissible (at the trial on the merits) as a self-serving statement.
Therefore, under the totality of the record, I believe the issue was sufficiently presented for appellate review.
NOTES
[1] Brown's conviction and sentence for manslaughter arising out of this same episode was affirmed by this Court on April 9, 1979 in State v. Brown, 370 So.2d 525.
[2] La.Code Crim.Pro. art. 768:

"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."