387 So.2d 1116 (1980)
STATE of Louisiana
v.
Wendell McDONALD.
No. 65228.
Supreme Court of Louisiana.
May 19, 1980.
Dissenting Opinion May 20, 1980.
Concurring Opinion June 6, 1980.
Dissenting Opinion November 4, 1980.
*1118 Loyola Law School Clinic, Arthur A. Lemann, III, New Orleans, Melinda M. Tucker, Steven J. Lane, Student Practitioners, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Thomas C. Cowan, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
BLANCHE, Justice.[*]
The defendant was convicted of first degree murder in violation of R.S. 14:30. In accordance with the jury's recommendation, he was sentenced to life imprisonment.
*1119 The facts adduced at trial indicate that on the night of July 6, 1977, Robyn Seymour was kidnapped from her home by Jerome West and the defendant. She was robbed of her jewelry and about twenty dollars in cash. Thereafter, she was shot and killed.
On July 26, 1977, defendant and two companions (one a female) were arrested for traffic violations incident to which a search of the vehicle's occupants revealed a .32 caliber revolver in the purse of the female acquaintance. That same day, defendant was taken to the station house and questioned by Officer Martin Venezia, who advised defendant that he was a suspect in the Seymour case. Defendant was read and waived his Miranda warning, and thereafter made a statement denying any knowledge of the Seymour incident. Defendant remained incarcerated and at 8:30 p. m., August 2, 1977, he was taken to an interrogation room where Venezia again questioned him as a suspect. After reading the defendant his Miranda warning and obtaining a waiver, Venezia took a taped statement from defendant by means of a cassette recorder belonging to a fellow officer. At 12:26 a. m. on August 4, 1977, Venezia, after having first read defendant his Miranda rights and having obtained a waiver, taped another statement from defendant. Having no other cassette available, Venezia used the previous tape in taking the second statement, thus effectively erasing and destroying the first taping.
After retaping defendant's statement, Venezia interrogated a female acquaintance of defendant who was being held in connection with another matter, and whom defendant implicated in the Seymour slaying. After questioning the acquaintance, Venezia again interrogated defendant at about 3:30 a. m. on August 4, 1977, after first having read him his Miranda rights and having obtained a waiver. This statement was verbal, and Venezia made it clear that defendant was no longer being interrogated as a suspect but as a perpetrator of the Seymour crime. In this statement, defendant made certain inculpatory statements but did not admit guilt.
On August 8, 1977, Gerard Edwards, a friend of defendant, was incarcerated on a weapons and aggravated battery charge. Edwards approached Venezia and offered to share defendant's cell with the view of obtaining inculpatory information from defendant. It was agreed between Edwards and Venezia (apparently with the knowledge and approval of the district attorney's office) that if Edwards cooperated with the police, the charges against Edwards would be dismissed. Edwards was placed in defendant's cell that same day and, within a short time, defendant made inculpatory statements to Edwards concerning the Seymour case. It is conceded that Edwards gave defendant no Miranda warning. On August 9, 1977, one day after Edwards was put into defendant's cell, defendant was formally arrested and charged with homicide. Following the arrest, defendant made a final statement in which he maintained he was at home at the time of the homicide.

Assignment of Error Number 9
By this assignment, the defendant contends that the trial court erred in admitting statements given by the defendant to Gerard Edwards. He contends the statements are inadmissible because Edwards was, in fact, an agent of the police, and their admission violated his Fifth Amendment right against self-incrimination by failing to give him a timely Miranda warning.
The United States Supreme Court, in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), stated that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The ruling of Miranda applies to statements taken during a custodial interrogation which the Court defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, supra at 444, 86 S.Ct. at 1612.

*1120 The rationale of Miranda is:
"[11] . . . that such an interrogation environment is created for no purpose other than to subjugate the individual to the will of his examiner. This atmosphere carries its own badge of intimidation. To be sure, this is not physical intimidation, but it is equally destructive of human dignity." Miranda, supra, at 457, 86 S.Ct., at 1619.
Applying these principles to the case before us, we find that the statements given by the defendant were not the result of a custodial interrogation, and thus, he was not entitled to Miranda warnings.
Although it is apparent that at the time defendant made incriminating statements to Edwards that he was in custody, and although it is also a fact that Edwards, upon volunteering to the authorities to learn what he could from defendant became, in this sense, an agent of the state; nevertheless, absent from this factual setting are two salient facts which brought forth the necessity of the warnings prescribed in Miranda.
First, there was no interrogation of defendant by any figure of authority and second, there was no interrogation environment or atmosphere which in any way could be described as intimidating.
The case presented here is that of one friend misplacing confidential information with another who, in turn, used it to his own advantage. The misplacement of such confidence did not require the safeguards required by Miranda in custodial interrogation.
The defendant also maintains that the admission of these statements violated his right to counsel under the Sixth Amendment.
In Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the United States Supreme Court found incriminating statements are, per se, involuntary if induced by officers or their agents from an accused after his indictment and while he is free on bail. In Massiah, an undercover agent surreptitiously listened to incriminating statements made by a defendant who had been indicted for federal narcotics violations, had retained counsel, had pleaded not guilty and had been released on bail. The Court in Massiah held that these statements were inadmissible because the defendant's Sixth Amendment right to counsel was violated.
It is clear that a person's right to counsel, under the Sixth and Fourteenth Amendments, attaches only at or after the time that adversary judicial proceedings have been initiated. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Here, the defendant, although arrested, had not yet been indicted and, under the rule of Massiah, his right to counsel had not yet attached at the time of his making the inculpatory statements.
Neither the defendant's Fifth Amendment "right to remain silent" nor his Sixth Amendment "right to counsel" were violated. The defendant simply chose the wrong confidant.
For these reasons, the assignment is without merit.

Assignments of Error Numbers 6 and 7
Error is alleged in the admission of contradictory statements made by defendant during the investigation of the crime and introduced in evidence before defendant testified. It is argued that this amounted to impeachment of the defendant, who did not testify at trial.
Officer Venezia testified that during the investigation, details of the offense were not released to the news media. Statements by defendant, on tape, were introduced to show defendant's knowledge of unreleased facts and the motive for the crime. Defendant's August 4, 1977 statement professed knowledge acquired from Jean Gibson who, on the date of arrest, was in possession of the murder weapon. Defendant stated that Gibson related her shooting the victim with the gun she had borrowed from defendant the day of the crime. On information given by Gibson, defendant named the street on which the *1121 victim was accosted; her being taken to her car and driven to the murder scene; a description of the victim's automobile; a description of the car used to follow the victim; the manner of operation of the car from which the fatal shots were fired; the subsequent movements of the murder vehicle; the items of jewelry taken; the amount of money involved; and the identification of a particular ring taken from the victim and shown him by Gibson. The state offered the statements as evidence from which the jury might reasonably infer such detailed information could not have been provided except by one present at the scene of the crime.
The state also introduced a statement made by defendant on August 9, 1977 after defendant was advised that Venezia had been given certain information by Jean Gibson and also following defendant's formal arrest. In this statement, defendant denied any knowledge of the crime and added that Jerome West had defendant's gun on the date of the offense in question.
We find no merit in defendant's argument that introduction of the statements amounted to impeachment of defendant who did not testify at trial. The statements were admissible as proof of the extent of defendant's knowledge of the crime. The August 9, 1977 statement indicates only defendant's reluctance to elaborate further on the events concerning the crime or his desire to remain silent. At best, it is an exculpatory statement which the state may introduce or withhold. In State v. Guillory, 373 So.2d 133 (La.1979), we upheld the state's refusal to introduce such a statement before the accused testified and declined to allow the accused to introduce the statement on the ground that to do so would bring his statement before the jury without subjecting him to cross-examination with respect thereto.
Impeachment of an accused does not occur until the accused testifies. La.R.S. 15:462, 486, 493. When introduced in presentation of the state's case in chief, inconsistent statements, whether inculpatory or exculpatory, are not subject to procedural rules governing impeachment of witnesses. State v. McGraw, 366 So.2d 1278 (La.1979); State v. Paternostro, 219 La. 563, 53 So.2d 673 (1951).
This assignment lacks merit.

Assignment of Error Number 8
Error is urged in the admission of the August 4, 1977 taped statement without admitting the August 3, 1977 taped statement which it supplanted and replaced.
Officer Venezia explained that the statement taped about 12:30 a. m., August 4, 1977 was recorded on the same cassette used to record defendant's statement given a few hours earlier at about 8:30 p. m., August 3, 1977. After listening to the first statement, it proved to be of poor quality, and since no other cassette was available, he took the second statement by using the cassette over again, thus erasing the first statement. He added that the second statement was essentially the same as the first with one exception. In the first statement, defendant selected a ring taken from the murder victim from among several rings shown him. At the retaping, defendant merely confirmed that a certain ring shown him was the one he had previously identified.
Every confession, admission or declaration sought to be used against any one must be used in its entirety to afford the affected party the benefit of any exculpation or explanation the entire statement may afford. La.R.S. 15:450.
The rule that confessions or statements of an accused must be used in their entirety applies also to declarations made at one time or having some connection with each other. State v. Guillory, supra; State v. Cardinale, 251 La. 827, 206 So.2d 510 (1968). While the recordings in question were not made at the same time, they were in some measure connected.
Our jurisprudence holds that to satisfy the requirements of 15:450, supra, if suffices that the substance of the statement be shown. State v. Marmillion, 339 So.2d *1122 788 (La.1976); State v. Domino, 234 La. 950, 102 So.2d 227 (1958); State v. Terrell, 175 La. 758, 144 So. 488 (1932). Venezia's testimony fulfills this requirement.
Defendant's alternative contention that the best evidence rule mandates production of the August 2, 1977 tape, is also without merit. It was shown why the tape was not available. Absent contrary proof of a showing of bad faith on the part of the state, Officer Venezia's testimony as to the content of the first statement was all that was required. State v. Marmillion, supra; State v. Prickett, 305 So.2d 509 (La.1974).

Assignment of Error Number 15
By this assignment, the defendant contends that the trial court erred in denying him a new trial. During the trial on the merits, Edwards testified as to certain statements the defendant had made to him. At the hearing on the motion for a new trial, Edwards recanted his testimony and stated that all of his prior statements were false. This Court has consistently held that the trial court is accorded considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its ruling will be disturbed on appeal only when there is a clear showing of an abuse of discretion. State v. Williams, 343 So.2d 1026 (La.1977). The defendant has made no such showing.
It is well-established that recantations of trial testimony should be looked upon with the utmost suspicion. State v. Tyler, 342 So.2d 574 (La.1977); State v. Linkletter, 345 So.2d 452 (La.1977). Thus, the trial court did not err in refusing to grant a new trial based on Edwards's recantation.
The assignment is without merit.

Assignments of Error Numbers 3 and 4
By these assignments, the defendant contends that his conviction for first degree murder violated the meaningful appellate review requirement of Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). The defendant argues that the infirmity in the Roberts statute was that the jury might choose the lesser offense regardless of the facts. He argues that in his situation, there was the additional problem that the jury would, through Louisiana's principal statute, R.S. 14:24, elevate evidence which could only sustain a second degree murder conviction to a conviction involving death.
In Roberts, the United States Supreme Court found that the determination of whether the death penalty was to be imposed under the Louisiana statutory scheme was not suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.
In doing so, the Court noted:
"Under the current Louisiana system, however, every jury in a First Degree murder case is instructed on the crimes of Second Degree murder and Manslaughter and permitted to consider those verdicts even if there is not a scintilla of evidence to support the lesser verdicts. See La. Code Crim.Proc.Ann., arts. 809, 814 (Supp.1975). And if a lesser verdict is returned, it is treated as an acquittal of all greater charges. See La. Code Crim. Proc.Ann., art. 598 (Supp.1975). This responsive verdict procedure not only lacks standards to guide the jury in selecting among first degree murderers, but it plainly invites the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they feel the death penalty is inappropriate. There is an element of capriciousness in making the jurors' power to avoid the death penalty dependent on their willingness to accept this invitation to disregard the trial judge's instructions. The Louisiana procedure neither provides standards to channel jury judgments nor permits review to check the arbitrary exercise of the capital jury's de facto sentencing discretion."
Roberts, thus, relates to the arbitrary and capricious imposition of the death penalty.
This rationale is not applicable to the defendant's situation. He was neither sentenced to death nor found guilty of a lesser included offense.
*1123 For this reason, the assignments are without merit.

Assignment of Error Number 5
By this assignment, the defendant contends that the trial court erred in refusing to grant the defendant's motion to quash the jury venire. The defendant was tried on May 4, 1978, a day after the City of New Orleans experienced unexpected and quite severe flooding. The Orleans Parish District Attorney's Office issued news releases informing prospective jurors that they need not report to jury duty on the morning following the flood. As a consequence, a number of prospective jurors failed to appear. The defendant argues that a jury selected from only those jurors who did appear violated his right to a jury drawn from a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940). Recently, the United States Supreme Court, in Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), addressed the issue of jury venire composition. The Court therein established the criteria necessary to show a violation as follows:
"In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." 99 S.Ct. at 668.
The defendant has shown none of these. The class outlined by the defendant is vague and ill-defined. Further, there is no showing of systematic exclusion of a group. For these reasons, the assignment is without merit.
The conviction and sentence of defendant are affirmed.
AFFIRMED.
CALOGERO, J., concurs with reasons.
LANDRY, J., ad hoc, dissents and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, Justice, concurring.
I concur. Where a defendant is not subjected to police custodial interrogation, Miranda is inapplicable.
LANDRY, Justice Ad Hoc, dissenting.
I respectfully dissent from the majority holding that admission of statements given by defendant McDonald to Gerard Edwards did not violate the Miranda mandate applicable to custodial interrogation.
Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) holds that the prosecution may not use statements whether exculpatory or inculpatory, stemming from custodial interrogation unless it is shown that safeguards effective to secure the privilege against self-incrimination were employed.
Custodial interrogation is defined in Miranda, supra, as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way.
One who is incarcerated is in custody for purposes of interrogation. Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).
In Miller v. California, 392 U.S. 616, 88 S.Ct. 2258, 20 L.Ed.2d 1332 (1968), four members of the Court dissented from dismissal of certiorari as having been improvidently granted; the dissenters being of the view that petitioner's constitutional rights were violated by the planting of an undercover agent in petitioner's cell to obtain a confession.
Henry v. United States, 590 F.2d 544 (4th Cir. 1978), involved admissibility of inculpatory remarks made by a prisoner to a paid informer. Citing the dissent in Miller v. California, Henry, supra, held that an accused's *1124 right to counsel was violated by the placing of a paid informer in the accused's cell. In holding the accused's statements inadmissible under the circumstances the court in Henry, supra, noted:
"An undisclosed government agent may effectively `interrogate' a defendant by simply engaging the defendant in a general conversation and if the response is a confession of guilt, the agent need not make any further more pointed inquiries. Miller v. California, 392 U.S. 616, 88 S.Ct. 2258, 20 L.Ed.2d 1332 (1968) (dissent from dismissal of certiorari).
In the instant case, even if we assume that Nichols obeyed his instructions not to interrogate Henry about the bank robbery, Nichols did testify that he engaged in conversation with his cellmate Henry. If, by association, by general conversation, or both, Henry developed sufficient confidence in Nichols that Henry bared his incriminating secrets to an undisclosed paid informer, we think that there was interrogation within the meaning of Brewer. We hold therefore that Henry's right to counsel was violated when the government proved incriminating statements made to his cellmate after his indictment and in the absence of counsel."
Admittedly, Henry, supra, differs from the case at bar in that in Henry, the accused, was under indictment. Here, it is significant, in my opinion, that the defendant had been expressly informed by the police that he was regarded as a perpetrator of the homicide.
In my judgment it is a violation of an accused's Miranda rights for the police to accomplish by subterfuge and trickery, in the form of a planted paid informer, that which the police cannot do under color of law. In this instance, the informer was not compensated in material form, but in the form of a promise of leniency and the dismissal of criminal charges pending against him. He was acting with the consent of, pursuant to the authority of, and subject to the direction and supervision of the police. He was in law and in fact an agent of the police.
In my judgment the statements made to the informer were tainted and should not be admissible in evidence against him.
I respectfully dissent.
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons assigned by Landry, J.
NOTES
[*] Chief Judge Paul B. Landry, Jr. participated in this decision as Associate Justice Ad Hoc.