STOKER, Judge.
Ón June 11,1987 a Rapides Parish Grand Jury indicted the defendant, Mark Walker, on three counts of misappropriation of *766 funds, in violation of LSA-R.S. 14:202. Defendant filed a motion to quash the indictment based on prosecutorial misconduct on July 30, 1987. After a two-day hearing, the trial judge granted the motion to quash the indictment on March 1, 1988. The State has appealed on two grounds, one of which has been abandoned.
FACTS
The defendant was the secretary-treasurer of CLD Enterprises, Inc. (CLD). CLD submitted a bid to the Rapides Parish Police Jury for the Cotile Recreation Restoration Project (Cotile). CLD was awarded the Cotile project, and the contract was signed on June 16, 1986. Pursuant to a corporate resolution, the defendant signed the contract on behalf of CLD. CLD began working on the Cotile project in the first week of July 1986.
In October 1986 the defendant received two subpoenas from the East Baton Rouge Grand Jury. One subpoena was a subpoena duces tecum for all original documents relating to the Cotile project. The other subpoena was a personal one for the defendant to appear and testify. After the defendant received immunity, he testified before the East Baton Rouge Parish Grand Jury on October 21, 1986. The target of this grand jury investigation was Sunbelt Southern Lloyds Insurance Company, which had written the performance bond for CLD on the Cotile project.
At the East Baton Rouge Grand Jury investigation, the defendant was represented by Mr. Eugene Cicardo. Mr. Cicardo was the registered attorney in CLD’s Articles of Incorporation, as well as the personal attorney for CLD’s officers. From the commencement of the Cotile project until the defendant was indicted in June 1987, Mr. Cicardo was the only attorney that represented the defendant on any legal matter.
In November 1986 several subcontractors on the Cotile project filed labor and material liens against CLD. Although these liens were later paid off, Dexter Ry-land of the Rapides Parish District Attorney’s Office remained in close contact with the defendant from November 1986 until early April 1987. Mr. Ryland is the First Assistant District Attorney of Rapides Parish and, also, the attorney for the Rapides Parish Police Jury.
Mr. Ryland and the defendant had been close personal friends for at least 15 years and Ryland had represented defendant on some legal matters a few years prior to this incident. Ryland was aware of the defendant’s position with CLD from the moment of CLD’s bid on the Cotile project and knew that the defendant was personally represented by Mr. Cicardo.
Mr. Ryland kept the District Attorney, Charles Wagner, informed on the legal matters involving Cotile on a day-to-day basis. CLD stopped working at the Cotile site in mid-December 1987. Judge Richard Lee testified that Ryland had told him of the possible criminal consequences in early January 1987.
On February 27, 1987 Mr. Ryland and the defendant had lunch together. Ryland informed the defendant of the contractor fraud provisions of the law and the possibility of criminal charges being brought against him. He also requested the defendant to bring him any records showing where the money went. The defendant brought these records to Ryland in early March 1987.
Due to their close friendship, the defendant furnished Mr. Ryland any information that he requested. Ryland never received the permission of Cicardo to talk to the defendant nor to receive any records of CLD. Ryland also did not ask the defendant who was representing him or advise him to speak to an attorney. Furthermore, Cicardo was unaware that Ryland and the defendant were in close contact concerning the Cotile project.
On April 8, 1987 a criminal investigation into the Cotile project was formally begun by Charles Wagner. Shortly thereafter, Ryland was replaced by Assistant District Attorney Jim Buck to handle the criminal investigation. The defendant was subpoenaed to appear and testify before the Rap-ides Parish Grand Jury. The defendant, *767 following the advice of Mr. Cicardo,did not testify. The defendant was indicted on June 11,1987. Defendant filed a motion to quash the indictment because of prosecuto-rial misconduct.
The trial judge quashed the indictment on the ground that the defendant’s constitutional right to effective counsel was violated by the fact that the defendant was not informed that he was a possible suspect in a criminal case. The trial judge felt that the fundamental right to fairness was violated.
The State appeals from the judgment granting defendant’s motion to quash the indictment. The State contends the trial court erred in sustaining the motion to quash based on prosecutorial misconduct. The State argues that defendant’s constitutional right to effective assistance of counsel was not violated by the alleged misconduct.
OPINION
Defendant’s constitutional right to the effective assistance of counsel is guaranteed by the U.S. Const. Amend. VI and LSA-La. Const. Art. 1, § 13. The right to counsel attaches only at the time that adversarial proceedings have been initiated against defendant “whether by way of formal charge, preliminary hearing, indictment, information or arraignment.” Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); State v. Gilmore, 332 So.2d 256 (La.1976) and State v. McDonald, 387 So.2d 1116 (La.1980).
A criminal prosecution had not been instituted against defendant at the time Dexter Ryland talked to him about the case and requested that he give him the CLD records. The discussion between defendant and Ryland was on February 27, 1987 and defendant was indicted on June 11, 1987. Therefore, defendant’s constitutional right to counsel had not attached on February 27, 1987 and was not violated by Ryland’s actions.
ETHICAL CONSIDERATIONS
The trial court found that Ryland should have informed defendant that he was a possible suspect in a criminal investigation and that Ryland should have made inquiries of defendant as to who was representing him or advised him that he should speak to an attorney before discussing the matter. The trial court also found that Ryland “mistakenly” violated defendant’s rights, “unwillingly and without malice.”[1] The opinion of the trial court rests entirely on ethical considerations and represents the trial court’s views as to fair play. The trial court did not address the issue of when the defendant’s constitutional right to effective assistance of counsel attached. The only citation of authority in the trial court’s opinion is United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). The Henry case is clearly distinguishable from this case before us. In Henry the defendant was under indictment and was in jail pending trial when the incriminating statements were deliberately elicited by government agents.
On February 27, 1987 defendant was not an accused suspect in the case, although he was aware of the possibility of criminal exposure. Defendant freely and voluntarily gave corporate records to the District Attorney’s Office for use in their investigations. From defendant’s point of view, the wiser course rtiight have been to seek his attorney’s advice before releasing *768 the corporate records. However, since defendant’s constitutional right to the assistance of counsel had not yet attached, Ry-land owed no duty to defendant to advise him to speak to an attorney or to contact defendant’s attorney himself.
Defendant argues that Ryland failed to comply with the standards of conduct prescribed for attorneys in Rules 4.2 and 4.4 of the Rules of Professional Conduct (formerly Disciplinary Rule 7-104)[2]. The standards in the Rules of Professional Conduct which govern the conduct of attorneys have the force and effect of substantive law. Succession of Cloud, 530 So.2d 1146 (La.1988). Rules 4.2 and 4.4 provide:
Rule 4.2. Communication with person represented by counsel
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. A lawyer shall not effect the prohibited communication through a third person, including the lawyer’s client.
[[Image here]]
Rule 4.4. Respect for rights of third persons
In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.
Assuming that the conduct of Ry-land violated these rules, the violations do not justify quashing the indictment against defendant. The rules grant no rights to the defendant not already granted by federal and state constitutions. If Ryland’s actions did not violate defendant’s constitutional rights, we see no reason to raise up greater rights based on these rules governing professional conduct.
We hold that the showing made by defendant to quash his indictment is insufficient to justify dismissal of the indictment. In so holding we do not necessarily disagree with the trial court’s assessment of the conduct of the assistant district attorney. However, assuming that the conduct was improper, even a violation of Sixth Amendment rights such as are alleged in this case should not be viewed in the abstract; rather, substance should be looked at.
There has been no trial in this case, and there has been no conviction of the defendant. The defendant complains because he has been indicted but candidly admits that, because of the secrecy of grand jury proceedings, he cannot show whether the indictment was based on information he may have supplied to Ryland. Consequently, defendant complains that he is unable to show prejudice. Nevertheless, the defendant contends that the situation justifies and requires quashal of his indictment. This same position was espoused by the trial court. The trial court was unable to find prejudice. In its written reasons for judgment the trial court made these observations:
“It is contended by the State that even if Mr. Ryland’s actions were not ‘totally appropriate’ that such actions did not prejudice the rights of the defendant and that the information gained was not used or contemplated being used by the Grand Jury when considering this case.
“The Court cannot speculate as to what evidence the Grand Jury considered nor can it assume the information gained by the District Attorney’s Office from the defendant was not used by the Grand Jury in returning an indictment.
“It may well be that none of the information furnished by the defendant was used by the Grand Jury or that it had any affect on the ultimate decision of the Grand Jury. Speculation by this Court on the importance or relevancy of the information ob- *769 tamed has no bearing on the motion to quash.
“The defendant’s constitutional right to effective assistance of counsel was violated. Mr. Ryland, as an Assistant District Attorney, is charged with the responsibility of seeing that every person is offered the full protection guaranteed by the United States Constitution and the Constitution of this state. Unwillingly and with no malice whatsoever the Assistant District Attorney mistakenly violated defendant’s constitutional rights. It is unfortunate that a seemingly innocent contact between friends resulted in a serious legal question. Nevertheless this Court cannot do less than uphold everyone’s constitutional rights regardless of the consequences which may follow. A defendant’s rights must be fully protected regardless of the innocence of the person violating those rights and the harshness of the remedy. United States v. Henry, [447 U.S. 264,] 100 S.Ct. 2183 [,65 L.Ed.2d 115] (1980). The State cites the case of U.S. v. Guerrerio, [675 F.Supp. 1430] (S.D.N.Y.1987) as controlling. In Guerrerio the prosecutor obtained a recording of a conversation between an informer and the defendant who was represented by an attorney at the time the recordings were made. The Federal District Court in New York refused to exclude the statements holding that an attorney disciplinary rule prohibiting ex parte communications with an opposing party who is represented by counsel was inapplicable.
“The instant case differs in that defendant’s right to effective counsel under the Sixth Amendment was violated and defendant had not been informed that he was a possible suspect in a criminal case.
“The events leading up to defendant’s indictment were unique. While there was no malice shown to have existed on anyone’s part it is apparent that in this case the defendant’s constitutional rights were violated.
“The seriousness of the crime charged and the questional manner in which the indictment was obtained compel this Court to grant the motion to quash. The activities surrounding the indictment were more than technical. The fundamental right to fairness was violated.
“For the reasons herein cited the Motion to Quash the Indictment is granted.”
APPROPRIATE REMEDIES
We disagree that dismissal of an indictment should automatically follow a finding of violation of Sixth Amendment rights relative to effective assistance of counsel. The appropriate considerations relative to sanctions to be applied in such cases were discussed by the United States Supreme Court in United States v. Morrison, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). In that case the court described the conduct of government agents as “egregious behavior” where they contacted a defendant in the absence of counsel and without counsel’s permission and attempted to obtain incriminating information from her. However, the defendant gave no information. Despite giving no information, the defendant moved to dismiss the indictment on the ground that the conduct of the agents violated her Sixth Amendment right to counsel. The District Court denied the motion and the Court of Appeals reversed. The United States Supreme Court reversed and remanded the case for trial. We set forth the following from the Supreme Court’s opinion authored by Justice White for a unanimous court:
The United States initially urges that absent some showing of prejudice, there could be no Sixth Amendment violation to be remedied. Because we agree with the United States, however, that the dismissal of the indictment was error in any event, we shall assume, without deciding, that the Sixth Amendment was violated in the circumstances of this case.
The Sixth Amendment provides that an accused shall enjoy the right “to have the Assistance of Counsel for his defense.” This right, fundamental to our system of justice is meant to assure fairness in the adversary criminal process. Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963); Glosser v. United States, 315 U.S. 60, 69-70, 75-76, 62 S.Ct. 457, 464, *770 467, 86 L.Ed. 680 (1942); Johnson v. Zerbst, 304 U.S. 458, 462-463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938). Our cases have accordingly been responsive to proved claims that governmental conduct has rendered counsel’s assistance to the defendant ineffective. Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed. 2d 424 (1977); Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); Gilbert v. California, 388 U.S. 263 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).
[1] At the same time and without detracting from the fundamental importance of the right to counsel in criminal cases, we have implicitly recognized the necessity for preserving society’s interest in the administration of criminal justice. Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. Our relevant cases reflect this approach. In Gideon v. Wainwright, supra, the defendant was totally denied the assistance of counsel at his criminal trial. In Geders v. United States, supra, Herring v. New York, supra, and Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), judicial action before or during trial prevented counsel from being fully effective. In Black v. United States, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966), and O’Brien v. United States, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967), law enforcement officers improperly overheard pretrial conversations between a defendant and his lawyer. None of these deprivations, however, resulted in the dismissal of the indictment. Rather, the conviction in each case was reversed and the Government was free to proceed with a new trial. Similarly, when before trial but after the institution of adversary proceedings, the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted. Gilbert v. California, supra; United States v. Wade, supra; Massiah v. United States, supra. In addition, certain violations of the right to counsel may be disregarded as harmless error. Compare Moore v. Illinois, supra, 434 U.S. at 232, 98 S.Ct. at 466, with Chapman v. California, 386 U.S. 18, 23, and n. 8, 87 S.Ct. 824, 827, and n. 8, 17 L.Ed.2d 705 (1967).
[2] Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel’s representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant’s right to counsel and to a fair trial.
More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.2 This has been the result reached where a Fifth Amendment violation has occurred,3 and we have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment. The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression.
[3] Here, respondent has . demonstrated no prejudice of any kind,, either transitory or permanent, to the ability of her counsel to provide adequate representation in these criminal proceedings. There is no effect of a constitutional *771 dimension which needs to he purged to make certain that respondent has been effectively represented and not unfairly convicted. The Sixth Amendment violation, if any, accordingly provides no justification for interfering with the criminal proceedings against respondent Morrison, much less the drastic relief granted by the Court of Appeals.4
In arriving at this conclusion, we do not condone the egregious behavior of the Government agents. Nor do we suggest that in cases such as this, a Sixth Amendment violation may not be remedied in other proceedings. We simply conclude that the solution provided by the Court of Appeals is inappropriate where the violation, which we assume has occurred, has had no adverse impact upon the criminal proceedings.
The judgment of the Court of Appeals is accordingly reversed, and the case is remanded for proceedings consistent with this opinion.

So ordered.

(Footnotes Omitted.)
CONCLUSION
Our holding in this case is that there was no violation of the defendant’s Sixth Amendment right to counsel because this right had not attached at the time he furnished information to the assistant district attorney. However, even if there had been a violation, we conclude that quashing the indictment was an inappropriate remedy. For the foregoing reasons, the judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. The trial court made the following observations in the course of its written reasons for judgment:
"All of the parties involved in this action were admittedly close personal friends. The Assistant District Attorney had acted as Mr. Walker’s personal attorney. Mr. Cicardo had represented Mr. Walker since the formation of C.L.D. Un-doubtably Mr. Ryland knew of Mr. Walker’s position with C.L.D. and knew or should have known that there was a remote possibility that there would likely be a criminal investigation. The District Attorney and his Assistants are certainly more knowledgeable concerning possible criminal activities than the defendant. The Court is convinced that Mr. Ryland had no intention of deceiving Mr. Walker. He had no intention of trapping or misleading Mr. Walker. However the Assistant District Attorney was in error in discussing with Mr. Walker any questions whatsoever as to the activities of the Cotile construction project.”

. The Rules of Professional Conduct are found in Louisiana Revised Statutes Annotated following LSA-R.S. 37:219 in Chapter A — Appendix Articles of Incorporation and By-Laws of the Louisiana State Bar Association. See Article XVI entitled Rules of Professional Conduct, Client-Lawyer Relationship. ■