384 So.2d 413 (1980)
STATE of Louisiana
v.
Richard D. KENNER, Jr.
No. 66227.
Supreme Court of Louisiana.
May 19, 1980.
*414 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
Michael S. Gallagher, Supervising Atty., William A. Roe, Student Practitioner, Loyola Law School Clinic, New Orleans, for defendant-appellant.
WATSON, Justice.[*]
Defendant, Richard D. Kenner, Jr., was convicted of two counts of armed robbery. The trial judge imposed a sentence of 198 years at hard labor under the habitual offender law. LSA-R.S. 15:529.1 A(1). On *415 appeal, defendant relies upon seven assignments of error.

FACTS
On September 15, 1978, Jerry Taylor, the husband of the owner of Marino's Furniture Store, was answering business inquiries from two men when one of them drew a revolver and told Taylor to lie face down on the floor. Angela Marino, the owner, was working in the back of the store and was forced to lie down beside her husband.
Twenty dollars were removed from Taylor's pocket. When one of the men threatened to kill him, Ms. Marino said she had money in her purse. One of the men accompanied Ms. Marino to her office, and emptied her wallet. He took approximately one hundred dollars and removed a gold Italian horn necklace with two diamonds in the chain from her person.
Ms. Marino, Taylor and a customer who had entered the store were all told to disrobe and remain in a bathroom until the robbers had left. Afterward Taylor called the police and reported a description, towit: two black males, one approximately five feet five, wearing khaki pants and a white sailor hat, and the other six feet tall, wearing blue jeans, a blue baseball cap, and a patterned blue shirt.
Officers Sanderson and Holland received the description over their radio. A few minutes later they observed Kenner running down the street, removing his shirt and stuffing it into a blue baseball cap. He was stopped and told he was under investigation for armed robbery. After being advised of his rights, he became violent. Defendant was taken to the crime scene, where he was identified by one of the victims and placed under arrest. When he was patted down, a gold Italian horn necklace with two diamonds was found, along with some money.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred at the hearing on the motion to suppress identification by prohibiting an exploration of whether the victims were shown the seized evidence prior to the identifications, a germane issue.
At the identification hearing, acting on the mistaken belief that there was a consolidated motion to suppress evidence, the State asked questions about the items seized from Kenner. After the court determined that no motion to suppress evidence had been filed, further questions about the evidence were forbidden. Thus, when defense counsel asked about the items retrieved from Kenner, the State's objection was sustained. Defense counsel's attempts to explain the reasons for his inquiry were limited by the court. When arresting officer Sanderson was asked whether the gold chain and money were shown to Taylor, one of the identifying victims, the State's objection was sustained.
Darryl Jones, an acquaintance of Kenner who was present at the identification, testified that the two male victims did not identify Kenner until they were shown the gold chain.
Defense counsel was allowed to ask Angela Marino whether her identification was made before she was shown the stolen jewelry. She testified that she saw the stolen items after the identification. Specifically, she said she was not told about the gold chain prior to the identification.
Arresting officer Sanderson testified that three persons identified defendant as the perpetrator of the robbery, although none of them were prompted to do so. Sanderson denied that the victims were told the suspect presented for identification was the guilty party. Angela Marino confirmed that she was not told the man presented for identification was the robber. Defendant Kenner was not wearing his blue shirt and baseball cap when identified.
Under these circumstances, the victims could properly have been asked to identify the stolen jewelry as well as the perpetrator of the armed robbery shortly following the offense. Even if defense counsel had established what his questions *416 sought to elicit, the subsequent identifications were valid.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the motion to suppress should have been granted because the crime scene identification was unconstitutionally suggestive and responsible for the in-court identification made later.
One-on-one confrontation identifications are not favored. However, when a suspect is apprehended shortly after commission of an offense, a return to the scene of the crime for identification is permissible under appropriate circumstances. State v. Dunbar, 356 So.2d 956 (La., 1978). A prompt confrontation can promote fairness "by assuring reliability and the expeditious release of innocent suspects." State v. Maduell, 326 So.2d 820 at 825 (La.).
Defendant Kenner was taken to the crime scene immediately after his detention by the police officers. Ms. Marino viewed him from inside her store before coming out to the police car for a closer look. No statements were made by the arresting officers to prompt an identification. The three victims viewed Kenner one at a time. The procedure was justified under these circumstances.
At trial, both Ms. Marino and Taylor identified defendant in court as the robber. Defendant contends that these incourt identifications resulted from the prior tainted identifications. However even if the one-on-one confrontations were improper, the courtroom identifications were properly admitted if they had an independent source. Three factors are relevant in this determination:
"(1) the prior acquaintance of the witness with the accused;
"(2) the length of time the witness observed the perpetrator before, during, and after the commission of the offense;
"(3) the circumstances under which the observation was made, i. e., the illumination at the scene, the witness's physical capacities, and the witness's emotional state at the time of the observation." State v. Frank, 344 So.2d 1039 at 1042 (La., 1977).
Neither victim knew the defendant prior to the robbery, but they had ample opportunity to observe him and favorable conditions for doing so.
Ms. Marino observed Kenner and his accomplice walk into the store. Since she was working and answering the phone, she paid no particular heed to them while they were at the front of the store. Ms. Marino did notice Kenner when he tapped her on the shoulder, and took her to her office at gunpoint. She described the gun in detail. Ms. Marino viewed defendant in a well-lighted store in full daylight. Although frightened by the gun, she was positive about her identification.
Taylor spoke with defendant's accomplice for a few minutes before Kenner entered the store. Since the accomplice drew a gun and forced Taylor to lie on the floor, Taylor only saw Kenner when he was forced to disrobe and enter the bathroom. However, he made an unequivocal identification. No evidence was presented that Ms. Marino or Taylor had impaired vision.
The in-court identifications were apparently independent of the prior identifications.
This assignment is without merit.

ASSIGNMENTS OF ERROR NUMBER THREE AND FOUR
Defendant contends that the trial court erred at the hearing on the motion to suppress evidence by disallowing a question to the arresting officer about how he felt when he made the stop and other questions about the description used as a basis for the arrest.
Defense counsel asked: "Officer, when you stopped the defendant, what did you feel?" (Tr., Motion to Suppress Evidence, p. 20) The State's objection to this question was designed to determine whether the officer reasonably suspected that defendant had committed a crime prior to the stop.
*417 Defense counsel had previously asked the officer whether he thought defendant had committed, was committing, or was about to commit a crime when he was stopped. Questions had been posed about other details relating to the decision to stop defendant, which allowed defense counsel to ascertain whether there was a reasonable suspicion of criminal activity and probable cause for the stop. The trial court's ruling on the vague question about the officer's feelings at the time of the stop did not prejudice defendant.
Defendant also protests because he was prohibited from asking certain questions regarding the suspect's physical description. Arresting officer, Holland, the only witness at this hearing, testified about the description broadcast on his radio. The suspects were stated to be: "two black subjects one of them wearing khaki pants with a white hat. The other one wearing blue jeans with a blue baseball cap." (Tr. 4) The trial court later restricted "... requesting the man on the same lines." (Tr. 13) When defense counsel subsequently asked for the complete description, the officer responded by adding another physical characteristic, height of approximately six feet. (Tr. 23) The court then ordered defense counsel not to ask any more questions concerning physical description.
The trial judge is afforded much discretion in controlling the cross-examination of witnesses. LSA-R.S. 15:275. Defense counsel elicited a complete physical description before being ordered to refrain from repetitious questions.
These assignments are without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant contends that his arrest was illegal and the trial court erred in denying his motion to suppress the evidence seized following his arrest.
Officer Frank Holland testified that he and his partner decided to stop Kenner because he fit the radio description. He was a black male, six feet tall, wearing blue jeans and stuffing a blue shirt into a blue baseball cap. He was observed approximately ten blocks from the crime scene, running. The robbery occurred only ten minutes before he was seen by the two policemen. Based on their observations, Holland and his partner decided to stop Kenner and make a further investigation.
Defendant was told that he met the description of an armed robbery suspect and was advised of his rights. Defendant was frisked, but no weapons were found. Kenner became violent and started shouting. Defendant was restrained and placed in the police car. Defendant was taken to the furniture store. Taylor saw Kenner in the police car and said he could have been one of the robbers. After Kenner was taken out of the police car, Taylor made a positive identification. Defendant was placed under arrest and searched. During the search, Ms. Marino came out of the store and identified Kenner. She told Officer Holland that he had taken some cash, a Dunhill lighter, a gold chain containing two diamonds and a gold Italian horn medallion. Officer Sanderson took a gold chain and a gold Italian horn out of defendant's pocket.
Only reasonable suspicion is required to temporarily detain a suspect for questioning. LSA-C.Cr.P. art. 215.1.
Since defendant matched the description of the robber, and he was running close to the scene of the crime, reasonable cause existed to make an investigatory stop. Kenner's violent reaction to the stop provided additional grounds to suspect his involvement in the crime.
A warrantless arrest must be based on the arresting officer's reasonable belief that the person to be arrested has committed or is committing an offense. LSA-C.Cr.P. art. 218; State v. Phillips, 347 So.2d 206 (La., 1977). Although defendant was not formally arrested until after he was identified by the victims, he was in fact arrested when he was initially detained and placed in the police car in handcuffs by the officers. LSA-C.Cr.P. art. 201. Probable cause existed for his arrest at that time.
This assignment of error lacks merit.

*418 ASSIGNMENTS OF ERROR NUMBER SIX, SEVEN AND EIGHT
Since these assignments were not briefed by defendant, they will be considered abandoned. State v. Bennett, 345 So.2d 1129 (La., 1977); State v. Blanton, 325 So.2d 586 (La., 1976).

ASSIGNMENT OF ERROR NUMBER NINE
This assignment contends there was error in failing to grant a motion for new trial based on a no evidence contention. It merely relies on the other assignments for the claim that the evidence and the identification were inadmissible and is without merit.

ASSIGNMENT OF ERROR NUMBER TEN
Defendant contends that the sentence imposed was excessive and unconstitutionally harsh, constituting cruel and unusual punishment. It is argued that the trial court failed to properly consider the sentencing guidelines of LSA-C.Cr.P. art. 894.1.
Defendant was convicted of two counts of armed robbery. Because of a prior conviction for attempted simple burglary, with a three year sentence, he was adjudicated an habitual offender. LSA-R.S. 15:529.1 A(1). Upon a first conviction for armed robbery, defendant could have received a sentence of imprisonment at hard labor for not less than five years and not more than ninety-nine years. LSA-R.S. 14:64 B. Under the habitual offender law, LSA-R.S. 15:529.1 A(1), defendant received the maximum sentence which could have been imposed, 198 years at hard labor, twice the maximum term for an armed robbery conviction.
LSA-C.Cr.P. art. 894.1, requires that a trial judge state the considerations and the factual basis for a sentence. When the reasons for an apparently severe sentence do not appear in the record, a sentence can be vacated and the case remanded for resentencing. State v. Cox, 369 So.2d 118 (La., 1979); State v. Jackson, 360 So.2d 842 (La., 1978); State v. Scarborough, 359 So.2d 982 (La., 1978); State v. Sepulvado, 359 So.2d 137 (La., 1978).
A review of this sentencing hearing transcript shows only the following comments by the court relative to the sentence:
"The law prohibits my giving you a suspended sentence. The court also knows that you are in need of correctional treatment in a custodial environment, and that a commitment to an institution for a long, long time is the only way to rehabilitate you. A lesser sentence than the one which I am about to impose would deprecate the seriousness of the offense."
The court's comments trace LSA-C.Cr.P. art. 894.1 A(2), (3) almost verbatim, but there is no statement of the factual basis for imposing the maximum sentence, and the trial judge's statement is an inadequate articulation under the law. The sentence is vacated and the matter remanded for resentencing in accordance with the guidelines of LSA-C.Cr.P. art. 894.1 and a full articulation of the considerations taken into account and the factual basis for the sentence imposed.
For the foregoing reasons, the conviction is affirmed and the matter is remanded for resentencing.
CONVICTION AFFIRMED: REMANDED FOR RESENTENCING.
CALOGERO, J., concurs with reasons.
CALOGERO, Justice, concurring.
While I concur in affirming defendant's conviction, I don't entirely agree with the majority's treatment of assignments of error Nos. 1 and 5.
In assignment of error No. 1 defendant contends that the trial judge erred in the pre-trial motion to suppress the identification hearing in limiting defendant's questioning of the victim when defendant attempted to show that the victim was unable to identify defendant until a police officer showed her some jewelry found on defendant. Although the trial judge's limitation of defendant's questioning was erroneous, *419 no reversible error resulted because later on defendant got to ask the victim the very same question. Furthermore, defendant was allowed to present witnesses who testified that the victims could not identify defendant when he was returned to the scene of the crime.
Defendant's argument in assignment of error No. 5 that he was illegally arrested is without merit because the police did have probable cause to arrest him. Ten minutes after the robbery took place defendant was spotted in an area about ten blocks from where the robbery occurred running down the street while attempting to remove his shirt and stuff it into a blue baseball cap. Defendant's appearance and clothing closely matched the reported attire of the suspect.
However, the fact that a young black man who is stopped by the police becomes angry and hostile is no real indication that he has committed a crime and adds little or nothing to the sufficiency of the evidence supporting probable cause to arrest.
NOTES
[*] Honorable FREDERICK STEPHEN ELLIS participated in this decision as Associate Justice Ad Hoc.