411 So.2d 37 (1982)
STATE of Louisiana
v.
James FRISCO.
No. 81-KA-1525.
Supreme Court of Louisiana.
March 2, 1982.
*38 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Richard Petre, Asst. Dist. Attys., for plaintiff-appellee.
Dwight Doskey, and Numa Bertel, of Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
WATSON, Justice.
Defendant, James Frisco, was charged with armed robbery of Andrew Washington in violation of LSA-R.S. 14:64.[1] A motion to suppress the victim's pretrial identification was denied. Evidence of an uncounseled pretrial lineup identification was introduced at trial. Defendant was convicted of armed robbery and sentenced to fifty years imprisonment.
The only issue on appeal is whether trial evidence of the uncounseled lineup identification constitutes harmless error.

FACTS
On January 26, 1981, at approximately 1:00 P.M., Andrew Washington, a driver of a Purolator Armored Car, was returning to the car with bags of cash and checks from a bank in the Lake Forest Plaza shopping center. An unknown man thrust a gun into his side and said: "Give it up." The assailant then "snatched the bag", shoved Washington and fired the gun at his face. (Tr. 28) Washington was struck in the left ear but not seriously injured. Washington chased the perpetrator with his own weapon and fired it, accidentally hitting a bystander. He could not catch the assailant.
A few days later, on February 2, 1981, Washington was shown six photographs of different people and picked out a photograph of Frisco. Although almost certain that this was the perpetrator, Washington said he would have to see him in person to be absolutely sure.
Frisco was arrested on February 3, 1981. Counsel was appointed prior to the preliminary examination on February 9, 1981. Frisco subsequently retained attorney Jay Zainey. When a physical lineup was conducted on February 19, Frisco did not have an attorney present.
The record does not reflect whether Frisco had an attorney when the lineup was conducted. Frisco said he did not know "whether they [his family] had hired you [Zainey]" at the time. (Motion to Suppress, *39 p. 13) Frisco testified that he did request Zainey's presence at the lineup. Ronald Richards, the detective supervising the lineup, did not recall whether defendant told him he had an attorney.
At the hearing on the motion to suppress, Washington said he was not given any instructions or suggestions by the police prior to the lineup. Washington said he and defendant were "chest to chest" and "face to face" for thirty to sixty seconds (Motion to Suppress, p. 6). He described defendant's light beige suit, low hair style and narrow face. He did not recall whether or not defendant had a moustache. However, Washington was positive in his identification, testifying:
"Because he was so close to me, I will never forget his face, if you call me to testify a year from now I won't forget anybody who tried to take my life, man." (Motion to Suppress, p. 9)
At trial Washington gave a detailed description of his assailant's color, height, weight, build, narrow face, light beige three piece suit, brown tie, low hairstyle, medium to heavy eyebrows and mustache. Washington pointed out the defendant in the courtroom and said there was no doubt in his mind about the identification. The State then asked Washington about the photographic and physical lineups. Washington stated that he was not completely sure about the picture selection because the man in the picture had a much heavier mustache. He was certain about his choice in the physical lineup and said no one suggested his selection or even talked to him at the physical lineup. Washington gestured toward the defendant as the man he had identified. Washington then testified that he could identify the man who robbed him solely from his recollection of the day he was robbed and did so.
Defendant attempted to establish an alibi defense. Ms. Adrian Williams, his neighbor, testified that Frisco spent almost the entire morning and afternoon of January 26 watching soap operas at her house. He was not wearing a suit and left only to pick up some diapers about 10:30 or 11:00 A.M. He was gone an hour or an hour and a half. She remembered that day because her mother had called about the robbery while James Frisco was there. The call came around 1:00 or 1:30 P.M., either during "One Life to Live" or "General Hospital". Both programs are on Channel 8. Frisco had missed work that day, which was a Monday or a Tuesday. When her mother called, Mrs. Williams already knew about the robbery from the T.V. news.
Frisco testified that he missed work the day of the robbery because his alarm clock malfunctioned. While watching the soap operas with Ms. Williams, he saw a news break or bulletin about a Purolator Armored Car guard being wounded in an armed robbery.
Jim Kemp, the news director of Channel 8, testified in rebuttal that the station did not have a news bulletin or flash about the robbery on the afternoon it occurred.
Trial was held on March 23, 1981, just over a month after the physical lineup.

LAW
A defendant has the right to have counsel present at a physical lineup after adversary judicial proceedings are initiated. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Art. 1, § 13, La. Const. of 1974. A preliminary examination is an "adversary judicial criminal proceeding". Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); LSA-C. Cr.P. art. 293; State v. Friddle, 396 So.2d 1242 (La., 1981). After the right to counsel attaches, trial evidence of an uncounseled pretrial lineup identification can constitute harmless error. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Moore, supra. An error is harmless if there is little likelihood that it would have changed the result. It must be clear beyond a reasonable doubt that the constitutional error did not contribute to the conviction. Chapman, supra; State v. Gibson, 391 So.2d 421 (La., 1980). When the courtroom identification is reliable and based on an independent source, it is unlikely that the pretrial identification affected the jury's *40 verdict, and the error is harmless. U.S. ex rel. Moore v. People of State of Ill., 577 F.2d 411 (1978).
A courtroom identification with an independent origin is purged of its primary taint. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Factors which can establish an independent basis for the identification include: the circumstances existing when the witness saw the criminal; the length and extent of the observation; lack of discrepancies between the initial description and the defendant; absence of conflicting identifications; photographic selection prior to the physical lineup; the certainty of the witness; a short interval between the crime and the lineup; prior acquaintance of the parties; and conduct of the lineup in a proper manner. Wade, supra; State v. Frank, 344 So.2d 1039 (La., 1977); State v. Kenner, 384 So.2d 413 (La., 1980); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

CONCLUSION
There is no indication that the lineup procedure used here was suggestive. This was not a one-on-one confrontation. Compare State v. Kenner, supra. Washington testified that he viewed the lineup without any coaching or hints from the police.
Washington gave a convincing explanation for remembering Frisco's face; Washington feared for his life. When the bullet was fired at his face, Washington had a surpassing reason for memorizing the face of the gun man. Washington's description of Frisco was detailed and indicated a close observation. The crime occurred near midday. In view of the time, the proximity of the two, and the riveting effect of Frisco's gun, Washington should have been able to identify his assailant. The period of observation was not long. However, the identification was unequivocal both before and during trial. Washington was never confused or doubtful. Compare State v. Frank, supra. Washington selected Frisco's photograph a few days after the crime and identified him in the physical lineup only two weeks later.
The courtroom identification by Washington was reliable and based on an independent source. When Frisco's alibi evidence was rebutted, the jury could have had little question about his guilt. It is clear beyond a reasonable doubt that the constitutional error in admitting trial evidence of the uncounseled pretrial identification did not contribute to Frisco's conviction. Chapman, supra. The error is, therefore, harmless. Moore, supra; Chapman, supra.
For the foregoing reasons, the conviction and sentence of defendant, James Frisco, are affirmed.
AFFIRMED.
CALOGERO, J., concurs.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
In this case evidence of a pretrial identification of the defendant as the culprit was introduced at trial. By its failure to distinguish this situation from one in which no evidence of a pretrial lineup was introduced, the majority has fallen into error.
In Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), the United States Supreme Court held that the defendant's Sixth Amendment right to counsel attached at the time of his preliminary hearing, which marked the initiation of adversary judicial criminal proceedings against him, that the state should not have been allowed to buttress its case-in-chief at the trial by introducing evidence of pretrial identification made in violation of the defendant's Sixth Amendment rights, regardless of whether there was an independent source for the victim's identification of the defendant, and the case would be remanded for a determination of whether the failure to exclude the evidence was harmless error.
The Court in Moore distinguished the cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *41 and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In Wade witnesses to a robbery who had identified the defendant at the uncounseled pretrial lineup testified at trial on direct examination by the prosecution that defendant was the man who had committed the robbery. The prosecution did not elicit from the witnesses the fact that they had identified the defendant at the pretrial lineup. The Court held that this testimony should have been excluded unless the prosecution could establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification. 388 U.S. at 240, 87 S.Ct. 1926, at 1939, 18 L.Ed.2d 1149.
In Gilbert the prosecution, in its case-in-chief, elicited testimony that witnesses had identified the accused at an uncounseled pretrial lineup. The Court recognized that such testimony would "enhance the impact of a witness' in court identification on the jury and seriously aggravate whatever derogation exists of the accused's right to a fair trial." 388 U.S. 263, at 273, 87 S.Ct. 1951, at 1957, 18 L.Ed.2d 1178, at 1187. Because that testimony was the direct result of the illegal lineup come at by exploitation of the primary illegality (Wong Sun v. United States), the high court held that the prosecution was not entitled to an opportunity to show that the testimony had an independent source. Id., at 272-283, 87 S.Ct. 1951, at 1956-1959, 18 L.Ed.2d 1178; see also, Wade, supra, 388 U.S. at 240 n.32, 87 S.Ct. 1926, at 1939, 18 L.Ed.2d 1149. This exclusionary rule was applied in the belief that such a sanction would help assure that the accused's constitutional right to the presence of his counsel at the critical lineup will be respected by the law enforcement authorities. Gilbert, supra, 388 U.S. at 273, 87 S.Ct. 1951, at 1957, 18 L.Ed.2d 1178.
The majority opinion finds that the courtroom identification by the victim of the robbery was reliable and based on an independent source. The prosecution in this case elicited testimony in its case-in-chief that the victim had identified the accused at a pretrial lineup. The witness was questioned about his identification made at the pretrial lineup immediately before making the in court identification:
Q. I'm going to show you a photograph which I will mark or which has been marked as S-1 for identification purposes. Does this photograph accurately depict the lineup which you attended on February 19th?
A. Yes, it does.
Q. Now, sir, as far as the six people featured in this lineup, do you see the person in the lineup who robbed you on January 26th?
A. Yes, I do.
Q. What's the number of the person?
A. Number one.
Q. What is the number of the person whom you identified on February 19th?
A. Number one.
Q. Do you see number one in Court?
A. I do.
Q. Would you point to him please?
A. Right there (indicating).
In Wade, supra, the prosecution did not elicit information from the witnesses regarding their pretrial identification of defendant and, therefore, was permitted to justify the admission of the in-court identification by showing with clear and convincing evidence that the in-court identifications were based on observations of the suspect other than the lineup identification. In cases such as the one at hand, however, where the prosecution buttressed its case-in-chief by introducing evidence of a pretrial identification made in violation of the accused's Sixth Amendment rights, even if the state can prove that the pretrial identification had an independent source, the identification is inadmissible. Because the prosecution made use of the pretrial lineup in its case-in-chief, the petitioner in this case is entitled to the benefit of the strict rule of Gilbert. Gilbert v. California, supra; Moore v. Illinois, supra. The only determination to be made by us as a reviewing court, therefore, is not whether the in-court identification had an independent basis, but *42 rather whether failure to exclude the identifications was harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967). See Moore v. Illinois, and State v. Gibson, 391 So.2d 421 (La.1980).
In determining whether an error involving federal or state constitutional rights is harmless, the test to be applied is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and that the "court must be able to declare a belief that the error was harmless beyond a reasonable doubt." Chapman v. California, supra; State v. Gibson, supra.
The pretrial lineup identification of the defendant by the victim was mentioned in front of the jury at least five separate times. Even the in-court identification of the victim was inextricably linked to the out-of-court identification at the lineup conducted in violation of defendant's Sixth Amendment rights. The only other identification of the defendant as the robber was that of the victim who selected a picture of the defendant out of a photograph lineup before the initiation of the adversary process which triggers the defendant's Sixth Amendment right to counsel. Although admissible, this identification was tentative. The victim testified before the jury that he couldn't be certain of this identification because "the man at the time didn't have a heavy mustache like that photograph showed." A witness for the defense testified that she had known the defendant for about two years and that Frisco had had his mustache for at least the last two years, and that it always looked like it did at the time of the trial.
Considering the tentative nature of the one admissible identification of the defendant and the numerous occasions on which the jury was informed and reminded of the unconstitutional identification made at the lineup, there is a reasonable possibility that the evidence complained of contributed to the conviction and the error cannot be declared harmless beyond a reasonable doubt. Moore, supra; Chapman, supra; Gibson, supra.
NOTES
[1] LSA-R.S. 14:64 provides:

"A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
"B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence."