Wendell McDONALD,
Petitioner-Appellant,

v.

Frank BLACKBURN, Warden,
Louisiana State Penitentiary,
Respondent-Appellee.

No. 86–3344
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 24, 1986.

Edward J. Castaing, Jr. (Court-appointed), New Orleans, La., for petitioner-appellant.

Michael McMahon, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Wendell McDonald (McDonald) appeals the dismissal of this his second petition for habeas corpus under 28 U.S.C. § 2254 challenging his Louisiana first degree murder conviction and life sentence. We affirm.

## CONTEXT FACTS AND PROCEEDINGS BELOW

McDonald was indicted for and convicted of the July 6, 1977 first degree murder of Robyn Seymour, contrary to LSA–R.S. 14:30. His conviction and life sentence, as well as the convicting trial court's denial of his motion for new trial, were affirmed by the Louisiana Supreme Court. *State v. McDonald,* 387 So.2d 1116 (La.), *cert. denied,* 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980). Sometime thereafter,

McDonald, with the assistance of the Loyola University Law Clinic, filed a habeas corpus petition under section 2254 in the United States District Court for the Eastern District of Louisiana challenging his conviction. The United States magistrate recommended denial of relief, and the district court, Judge Veronica Wicker, approved the magistrate's report and dismissed the petition on August 26, 1981. McDonald did not appeal.

In May 1984, McDonald filed the instant habeas petition in the United States District Court for the Eastern District of Louisiana, again challenging his murder conviction and alleging only two grounds for relief, as follows:

"Ground one: Petitioner was denied his 5th Amendment right to remain silent and his 6th Amendment right to counsel when inculpatory statements were introduced against him.

"Ground two: Petitioner was denied due process when the trial court denied his motion for new trial based on the recanted testimony of the State's primary witness."

In a memorandum accompanying his petition (as well as in a subsequent supporting memorandum filed below by McDonald's counsel), McDonald explained that the first ground related to the trial testimony of a fellow prisoner, Gerard Edwards, as to incriminating statements McDonald made to Edwards while they were cell mates following McDonald's arrest, and after counsel had been appointed for McDonald at his initial appearance before the state magistrate, but before McDonald was indicted, or charged by information, and before any preliminary examination or arraignment. Edwards, McDonald asserted, had, unbeknown to McDonald, agreed with the police, in return for favorable treatment respecting charges against him, to elicit information from McDonald as to his involvement in the Seymour murder. With respect to the second ground in McDonald's current habeas petition, the mentioned memorandum reflects that it relates to Edwards' testimony at the state court hearing

on McDonald's motion for new trial, at which Edwards recanted his trial testimony and asserted that McDonald made no such statements to him respecting the Seymour murder.

As the magistrate below found, McDonald's prior habeas petition alleged the following grounds for relief:

"Ground one: Conviction obtained by use of statement obtained in violation of petitioner's right to counsel. -

"Ground two: conviction obtained by use of statement obtained in violation of Miranda v. Arizona.

"Ground three: The conviction was obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant."

In the instant proceeding, the magistrate, *sua sponte*, using the model form promulgated for such purpose, advised McDonald that his petition was subject to dismissal under Rule 9(b) of the Rules following 28 U.S.C. § 2254, because "A. You fail to alleged [*sic*] new or different grounds for relief in Ground One of your current petition of which there has been a prior determination on the merits in" the prior petition, and "B. The allegation in Ground Two of your petition is based on facts both known and available to you, at the time you filed your previous Federal Habeas Corpus Petition."

McDonald, within the twenty days allowed, endorsed the following response on the Rule 9 form:

"The issue raised in Ground One of my current petition was never fully previously determined on the merits and an intervening change in the law has occurred. The issue raised in Ground Two was not raised by the student practitioner despite the merits it present[s] and the 'ends of justice' warrant that under the circumstances it should be heard."

In an accompanying memorandum, McDonald stated, with respect to ground one of this current petition:

"[P]etitioner concedes that his current petition raises grounds for relief which are essentially the same as those raised

in his prior application, but he avers that the prior determination was not made directly on the merits and that the 'ends of justice' would be served by readdressing the merits of the two contentions involved.

"....

"In turning to the facts of the instant matter, and in particular Ground One of petitioner's current petition, petitioner avers that although this ground is a consolidation of Ground One and Ground Two of his prior application, the prior determination was not made on all the merits of the claim since petitioner's contention that his conviction was obtained by use of a statement obtained in violation of his right to counsel was neither addressed nor discussed by United States Magistrate Eileen Gleason Shaver when she recommended that petitioner's petition for writ of habeas corpus be dismissed on August 24, 1981. She merely concluded that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not controlling since it prohibits coercive custodial interrogation initiated by police officers or prosecutors.

"Petitioner avers that the merits of the issue in Ground One of his prior petition, which is also raised in his current petition, i.e., the inculpatory statements were inadmissible as being 'deliberately elicited' in violation of his 6th Amendment right to counsel, were never reached in the earlier proceeding by Magistrate Shaver. In the memorandum in support of his current petition, petitioner cites and relies on the United States Supreme Court authority of *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), which was decided a month after petitioner's conviction was affirmed by the Louisiana Supreme Court. *Henry*, supra, certainly can be categorized as an intervening change in the law because it definitely is controlling in the instant matter, and it broaden[s] the scope of the right to counsel in unique cases such as the case in the instant matter.[1] Magistrate Shaver

made no mention of *Henry* in her recommendation, and she failed to apply the legal standard it established to the facts presented by petitioner in his prior application in support of his claim that his conviction was obtained by use of a statement obtained in violation of his right to counsel.

"As previously cited, in determining whether the 'ends of justice' would be served by readdressing the merits of the same contention as raised in a prior petition, the reviewing court must look at objective factors, such as whether there was a full and fair hearing with respect to the first petition and whether there has been an intervening change of the law. *Potts v. Zant* [638 F.2d 727 (5th Cir.1981)], supra, at 740. In the instant matter, there was an intervening change of the law because *Henry* involved the inadmissibility of inculpatory remarks made by a prisoner to a paid informer, an issue never decided upon by the United States Supreme Court....

"――――――

"1 Two justices of the Louisiana Supreme Court dissented from the affirmance of petitioner's conviction and cited *Henry* as it had been decided by the Fourth Circuit Court of Appeal[s]."

Sometime following this response, the magistrate appointed counsel for McDonald, and ordered an evidentiary hearing "to determine at what point petitioner's Sixth Amendment right to counsel attached."

McDonald was represented by counsel at the evidentiary hearing, and the evidence

there consisted of the testimony of one of the Orleans Parish magistrate judges, who had not participated in McDonald's case, the director and a senior staff attorney of the Orleans Indigent Defender Board (OIDB), neither of whom had been involved in McDonald's case, and OIDB attorney Cuccia, who had been appointed to represent McDonald at his initial appearance before the state magistrate on August 4, 1977, pursuant to La.Code Crim.Proc.Ann. art. 230.1[1] (following McDonald's August 16, 1977 first degree murder indictment, other counsel were appointed to represent him). Except for a portion of Cuccia's testimony concerning his appointment, the evidence at the hearing did not directly relate to McDonald's case, but rather concerned the general nature and scope of representation, in 1977, of OIDB attorneys appointed at the initial magistrate appearance pursuant to article 230.1.

The state record in McDonald's case was also available and considered. It reflected that Robyn Seymour was kidnapped, murdered, and robbed of her jewelry and about twenty dollars in cash on July 6, 1977 in New Orleans. McDonald, and a female companion, Bobbie Jean Johnson, were arrested together in New Orleans for a traffic violation on July 26, 1977, and a pistol, which later turned out to belong to McDonald and to be the Seymour murder weapon, was then found in Johnson's purse. McDonald, advised that he was a suspect in the Seymour killing, was questioned by the police on July 26. He denied all knowledge of the Seymour crime, but was nevertheless retained in custody. He

---

1. Article 230.1 provides:

"A. The sheriff or law enforcement officer having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the seventy-two hour period referred to herein. The defendant shall appear in person unless the court by local rule provides for such appearance by telephone or audio-video electronic equipment.

"B. At *this appearance*, if a *defendant has* the right to have the court appoint counsel to

defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or review a prior determination of the amount of bail.

"C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.

"D. The failure of the sheriff or law enforcement officer to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant."

was questioned again on August 3, and admitted that he owned the pistol found in Johnson's purse, and implicated her as the murderess, giving details of the offense which would only have been known to one present when it was committed and which he claimed had been related to him by Johnson, who, he said, had admitted to him that she killed Seymour. After questioning Johnson on August 4, the police again questioned McDonald, who this time stated he had lied about Johnson's involvement in the Seymour killing. He did not explain how, in that event, he was aware of the details of the offense. He concluded by stating that he would "cop out" if Jerome West—known as "Snag" and also a suspect in the Seymour murder—"copped out." On all these occasions, McDonald was fully advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and waived them. The police then rearrested McDonald and "rebooked" [2] him for the Seymour murder and robbery. Subsequently, on August 4, McDonald was brought before the state magistrate in accordance with article 230.1 (*see* note 1, *supra* ) and attorney Cuccia of the OIDB was appointed to represent him. Cuccia then promptly filed a motion for a preliminary examination on the robbery charge under La.Code Crim.Proc.Ann. art. 292,[3] and the hearing was set for August 11. Subsequently, the hearing was postponed until 6:00 p.m., August 16, at the request of the state. On August 16, McDonald and West were indicted by the grand jury for the first degree murder of Seymour, and consequently no preliminary hearing was ever held. On August 22, other counsel was appointed for McDonald and subsequently he was arraigned.[4]

On August 4, the New Orleans police arrested Edwards, a friend of McDonald's of several years, on unrelated charges. Edwards agreed with the police, with the approval of the district attorney's office, that he would be placed in the cell with McDonald to obtain information about his involvement in the Seymour killing, in return for which the charge against Edwards would be dismissed. Edwards was placed

2. Article 228, La.Code Crim.Proc.Ann., provides:

"It is the duty of every peace officer making an arrest, or having an arrested person in his custody, promptly to conduct the person arrested to the nearest jail or police station and cause him to be booked. A person is booked by an entry, in a book kept for that purpose, showing his name and address, the offense charged against him, by whom he was arrested, a list of any property taken from him, and the date and time of booking. Every jail and police station shall keep a book for the listing of the above information as to each prisoner received. The book shall always be open for public inspection. The person booked shall be imprisoned unless he is released on bail."

3. Article 292 provides:

"The court, on request of the state or the defendant, shall immediately order a preliminary examination in felony cases unless the defendant has been indicted by a grand jury.

"After the defendant has been indicted by a grand jury, the court may rescind its order for a preliminary examination.

"An order for a preliminary examination in felony cases may be granted by the court at any time, either on its own motion or on request of the state or of the defendant before or after the defendant has been indicted by a grand jury."

Article 295, La.Code Crim.Proc.Ann., provides for use of testimony of the defendant or others at a preliminary examination "upon the trial of the case" or "in any subsequent proceeding in the case," as well as in other cases, subject to certain limitations. Article 296, La.Code Crim. Proc.Ann., provides that if probable cause is not shown at the preliminary examination, and the defendant has not been indicted, he shall be released from custody or bail; if probable cause is found, bail shall be set if defendant is entitled to it; if the defendant has been indicted, the proceeding is limited to perpetration of testimony and fixing bail.

4. Under La.Code Crim.Proc.Ann. arts. 551, 552, and 553, arraignment consists of reading the indictment to the defendant in open court and having him plead thereto. Under La.Code Crim.Proc.Ann. arts. 512 and 513, at arraignment, but before a plea is accepted, counsel is to be appointed for an unrepresented indigent defendant who desires same. In a capital case, counsel may be appointed earlier, but must have been admitted to the bar at least five years (although counsel with less experience can be appointed as an assistant). *Id.* art. 512. At the hearing below, Cuccia testified that in August 1977 he had not been admitted to the bar for as long as five years, which is why he requested the preliminary examination only on the robbery charge.

in the cell with McDonald on August 8 and remained there until August 11. On August 9, the police took McDonald out of his cell and, after again advising him of his *Miranda* rights, which he waived, questioned him further about the Seymour case, which he denied any knowledge of. This questioning apparently led McDonald to believe that the police had recovered Seymour's ring from McDonald's girl friend. According to Edwards' trial testimony, when McDonald returned, he told Edwards "that the police had went and gotten the ring from Carolyn Damond.... I asked him: what ring? And he told me the ring that they got off the girl, the dead girl." Edwards testified that he knew Carolyn Damond to be McDonald's girl friend. He further testified that McDonald thereafter described to him how he, McDonald, and Jerome West had committed the murder, rape, and robbery of Seymour.

Prior to Edwards' testifying before the jury, the Louisiana trial court held a hearing out of the presence of the jury on the admissibility of the anticipated testimony. At his hearing, Edwards testified that he did not inform McDonald that he was acting as a police informant; nor did he warn him of his *Miranda* rights. Edwards' testimony revealed that the first time the Seymour incident was mentioned was when McDonald returned to the cell after being questioned on August 9 and stated that the police had gotten the ring from Carolyn Damond. Edwards stated that then, and every other time the Seymour incident was mentioned, McDonald brought it up.[5] Edwards did not "ever prod him along when he started talking about it." Edwards further testified, "I couldn't ask him anything—no questions about this and that, you know, I was letting him talk. I was talking about [phonograph] records, and things. I have been knowing him for nine years, and he felt free to talk to me." Defense counsel then asked, respecting Ed-

wards' referenced "what ring" statement, "That was a question, was it not," to which Edwards replied, "That was conversation." He was then asked, "What did you ask him after that," and responded, "I didn't ask him anything. Everything I know he told me; he told it to me. I didn't ask him." After further cross-examination failed to shake Edwards' testimony in this respect, the trial judge questioned him:

"BY THE COURT: Q Did you ever initiate any questions? did you ever just start questioning him about anything pertaining to this case?

"A No, sir.

"BY THE COURT: Alright. Let's move on. *I am convinced that's the correct interpretation.*" (Emphasis added.)

Defense counsel objected to Edwards' being allowed to testify to what McDonald told him in the cell on the dual grounds that McDonald, though in custody, had not been advised in accordance with *Miranda* respecting his statements to Edwards, thus violating his Fifth Amendment rights, and that Edwards' testimony would also violate McDonald's Sixth Amendment right to counsel, since at the time attorney Cuccia had been appointed to represent him by the magistrate, even though McDonald had not then been indicted (and no preliminary examination had been held), as Cuccia's appointment would last, according to defense counsel, "until there was a formal appointment" (presumably after indictment and at or before arraignment). The objections were overruled, and Edwards was allowed to testify.

The overruling of these objections to Edwards' testimony was complained of on appeal to the Louisiana Supreme Court. That court, in its May 19, 1980 affirmance of McDonald's conviction, rejected the *Miranda* claim because "there was no interrogation of defendant by any figure of authority" and "no interrogation environment

---

5. Also, defense counsel later asked Edwards whether, when McDonald returned to the cell after being questioned by the police on August 9, Edwards had asked McDonald where he had been. Edwards replied:

"When he came back, the first thing he said was that the police went and picked up the ring from Carolyn Damond, and she should have known it; she should have known to throw the ring away."

or atmosphere which in any way could be described as intimidating." *McDonald,* 387 So.2d at 1120. The Sixth Amendment claim likewise was rejected because the Sixth Amendment right to counsel "attaches only at or after the time adversary judicial proceedings have been initiated," and here "the defendant, although arrested, had not yet been indicted" and hence "his right to counsel had not yet attached." *Id.*[6] McDonald's petition for certiorari to the United States Supreme Court, which was denied November 3, 1980, *McDonald v. Louisiana,* 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980), raised these same grounds.[7]

At the habeas evidentiary hearing below, the testimony showed that generally about 12,000 prisoners a year were brought before the Orleans Parish magistrates for article 230.1 proceedings. This was customarily done at fixed times of the day, with a group of arrestees (numbering from the teens up to the thirties) being brought in at one time, and with the single OIDB attorney present being assigned to represent them all (except in the very rare case of those who might have counsel present or not desire counsel). The magistrate would advise the group en masse of their right to counsel, their *Miranda* rights, and their right to a preliminary examination (if they were booked on a felony), and would appoint the OIDB attorney counsel. The appointed OIDB counsel would give similar advice en masse to the arrestees at the rear of the courtroom, and also briefly meet

there with each arrestee. Little, if anything, was said at this time except to ascertain some matters relevant to bond and whether a preliminary examination was desired. Some OIDB attorneys requested a preliminary examination in all felony cases, some in all such cases where the arrestee requested it, some depending on the case. Cuccia was in the latter category. The main purpose of the article 230.1 appearance was to fix an initial bond, for which the district attorney's office had a representative present, although allowing request for preliminary examination (in felonies) was also a purpose. Approximately half of those brought to article 230.1 proceedings never had formal charges filed against them. It was understood that the appointment of the OIDB attorney made at the article 230.1 proceeding would last until formal charges were filed and when, at or shortly before the arraignment, new counsel would be appointed by the trial court. However, the OIDB attorney appointed at the article 230.1 appearance normally represented the arrestee at any article 292 preliminary examination (at least where, as was usually the case, this took place before formal charges were filed). In 1977, the OIDB had a total of seventeen attorneys; it represented indigent defendants in Orleans Parish in trials and on appeals, as well as at article 230.1 proceedings, to which generally the less experienced counsel were assigned. Normally, though not invariably, the article 230.1 attorney con-

---

**6.** Under Louisiana law, "prosecution" of an offense punishable by death or life imprisonment "shall be instituted by indictment by a grand jury," while other "prosecutions in a district court [felonies] shall be instituted by indictment or by information." La.Code Crim.Proc.Ann. art. 382. An "information" is a written charge of crime made and signed by the district attorney and filed in the court having jurisdiction. *Id.* art. 384. Louisiana courts have held, however, that, under the Louisiana analogue of the Sixth Amendment, "adversary judicial proceedings are initiated" with the article 292 preliminary examination (*see* note 3, *supra*), *State v. Frisco,* 411 So.2d 37, 39 (La.1982), but not with the article 230.1 initial appearance (*see* note 1, *supra*), even if counsel is then appointed. *State v. Friddle,* 396 So.2d 1242, 1246–47 (La.1981).

Under La.Code Crim.Proc.Ann. art. 701 B, an indictment or information must be filed within sixty days following arrest when the defendant is "being held for a felony," and within one hundred fifty days when he "is booked with a felony" but not in custody; if these limits are transgressed without good cause shown, the defendant shall be released or his bail discharged.

**7.** McDonald's instant habeas petition states that his petition for certiorari raised the following ground:

"Petitioner's Fifth Amendment privilege against self-incrimination and Sixth Amendment right to counsel were violated when statements allegedly made to person 'planted' by Police Department in petitioner's cell were introduced at trial against him."

ducted no investigation and did not interview the arrestee to any significant extent, as there was generally neither time nor need for that.

In McDonald's case, Cuccia did talk briefly with McDonald on August 4 in the courtroom where the article 230.1 proceedings were held, but apparently this was only the usual conversation with an arrestee and Cuccia thereafter had no contact with McDonald. However, Cuccia, either shortly before or shortly after the August 4 article 230.1 appearance, did talk to Bobbie Jean Johnson, whom he was also then appointed to represent, and she told him that she had given a statement implicating McDonald in the Seymour offense, but that it was false and had been coerced from her. This caused Cuccia to make his August 4 request for a preliminary examination on McDonald's booking for robbery of Seymour (*see* note 4, *supra*). Cuccia also objected when, on August 11, this preliminary examination was reset, at the state's request, for 6:00 p.m., August 16. McDonald was indicted earlier on August 16, the preliminary examination was not held, and Cuccia did not thereafter represent him.

McDonald did not testify at his trial or at his motion for new trial hearing (or at any of the suppression or other hearings out of the presence of the jury in connection with his trial); nor did he testify at the habeas hearing below.

Following the evidentiary hearing below, the magistrate made findings and conclusions, recommending that McDonald's habeas petition be dismissed with prejudice. These were served on the parties with the advice that timely objections would have to be filed or they would be precluded from attacking the findings under *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982). McDonald's counsel filed timely objections. The district court, Judge Veronica Wicker, considered the record and objections, rejected the latter, approved the findings and recommendations, and dismissed the petition.

CLAIMS CONCERNING ADMISSIBILITY OF EDWARDS' TRIAL TESTIMONY

In his findings and recommendation, the magistrate determined that "[j]udgment was rendered on the merits in this earlier [federal habeas] proceeding on August 26, 1981, dismissing petitioner's [McDonald's] application." The magistrate also concluded:

"20. The findings and recommendation made by the Magistrate and adopted by the Court in dismissing petitioner's earlier federal habeas application were correct and would not have been altered by the rational[e] set forth in *Henry* [*United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980)].

"21. A second or successive petition for habeas relief may be dismissed if it fails to allege new or different grounds for relief and the prior determination was on the merits. Rules Governing Section 2254 Cases in the United States District Court, Rule 9(b).

"22. Petitioner was given an opportunity to explain why the Court should not consider dismissing his petition on the issue of Sixth Amendment claims as an abuse of the writ.

"23. In response to the Court's request, petitioner stated that the decision in *Henry* should be considered an intervening change in the law.

"24. As pointed out above, *Henry* did not create an intervening change in the law nor does its rational[e] assist petitioner's claim.

"25. Petitioner's re-submission of his Sixth Amendment claim should be dismissed as an abuse of the writ."

McDonald did not question or object to any of the foregoing in his objections to the magistrate's report filed by his counsel with the district court. And, in this appeal, in which McDonald is represented by counsel, he has likewise not challenged any of the foregoing.

■ We hold that ground one of McDonald's present habeas petition was properly dismissed by the district court under Rule 9(b)'s provision that "[a] second or

successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits" and under the similar provision of 28 U.S.C. § 2244(a). Although we do not have before us the record of the prior habeas proceeding, it is clear that the magistrate and district court properly took judicial notice of it, particularly as it was in the same court and involved the same district judge. *See State of Florida v. Charley Toppino & Sons, Inc.,* 514 F.2d 700, 704 (5th Cir. 1975). McDonald has admitted that ground one of his present petition "is a consolidation of," and raises "essentially the same" contentions as those raised in, grounds one and two of his prior petition. Indeed, that is plain from examination of the grounds raised in the earlier petition as found by the magistrate and set out previously in this opinion.

The magistrate determined that the prior petition was denied on the merits. McDonald did not challenge that determination before the district court, and has not challenged it on appeal. In response to the Rule 9(b) notice, McDonald had urged that the prior determination "was not made directly on the merits," or "was not made on all the merits of the claim," because in the earlier case the magistrate did not expressly address his denial of counsel claim, as distinct from his *Miranda* claim, and because *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), represented "an intervening change in the law." We are not persuaded on either basis.

McDonald does not dispute that his prior petition expressly raised each of the two arguments which he has now combined in ground one of his present petition. That Edwards' trial testimony was urged to be inadmissible on the basis of each of these arguments likewise clearly appears from the Louisiana Supreme Court's opinion affirming McDonald's conviction, as well as from the Louisiana trial record. Nor has McDonald contended that the dismissal of his prior petition was for any procedural reason, or was on any basis other than that he was substantively not entitled to relief. Indeed, McDonald's response to the Rule 9(b) notice in substance admits that the magistrate in the prior habeas *did* determine that the admission of Edwards' testimony of what McDonald said to him did not violate McDonald's constitutional rights. This is necessarily both a rejection of all the arguments to the contrary then made by McDonald and a determination on the merits. And this is true notwithstanding that the magistrate may not have expressly discussed each of the legal theories which McDonald clearly put forward. *Cf. Johnson v. McCotter,* 803 F.2d 830, 833 (5th Cir.1986) ("another argument in support of the same claim" is not a new claim). Further, the denial in the prior case was by the district court, Judge Veronica Wicker, not the magistrate. With respect to McDonald's contention that *Henry* represents "an intervening change in the law," it suffices to point out that *Henry* was decided by the Supreme Court on June 16, 1980, some fourteen months *before* the dismissal of McDonald's prior petition.[8] There is no basis on which we can find that it was error to conclude that the prior determination was on the merits so far as concerns ground one of McDonald's present petition.

■ We recognize that a successive petition should not be dismissed if the district court concludes that such action would not serve the "ends of justice." However, we observe that "the constitutional claim argued by" McDonald in his ground one "does not itself raise any question as to his guilt or innocence." *Kuhlmann v. Wilson,* — U.S. —, 106 S.Ct. 2616, 2628, 91

---

**8.** We also observe that the dissenting justices on the Louisiana Supreme Court in McDonald's direct appeal relied on the Fourth Circuit's decision in *Henry v. United States,* 590 F.2d 544 (4th Cir.1978), which was ultimately affirmed by the Supreme Court in *Henry. See State v. Mc-*

*Donald,* 387 So.2d at 1123–24. Further, McDonald's counsel argued below that the Supreme Court's decision in *Henry* did *not* create a new rule of law, but merely applied the rule of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), to new facts.

L.Ed.2d 364 (1986).[9] The evidentiary value and reliability of McDonald's statements are wholly unaffected by the fact that Edwards—whom McDonald clearly believed to be his friend and not a police informant—did not warn McDonald of his *Miranda* rights and the fact that Cuccia had been appointed as McDonald's attorney at the article 230.1 proceeding. As previously pointed out, there has been no change in the law favorable to McDonald since a time more than a year before the first section 2254 petition was dismissed. This is unlike the situation in *Sockwell v. Maggio*, 709 F.2d 341, 344 (5th Cir.1983) (evidentiary hearing required to determine whether petition raising claim under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), was barred by Rule 9(b) on account of 1978 dismissal of prior petition). Further, no facts or evidence tending to support McDonald's petition are alleged (or were developed at the hearing below) which are not apparent on the face of the state record. In short, there is no factual or legal support for McDonald's ground one beyond that which was apparent in the published reports and in the record of his state conviction long before his prior section 2254 petition was dismissed.

We recognize that the state has not raised the successive petition issue. Indeed, the state never filed an answer below. However, the successive petition question may be raised by the district court *sua sponte. Jones v. Estelle*, 722 F.2d 159, 164 (5th Cir.1983) (en banc); *Resendez v. McKaskle*, 722 F.2d 227, 231 (5th Cir.1984). Once so raised, the petitioner has the burden of demonstrating that the ends of justice would not be met by a Rule 9(b) dismissal. *Kuhlmann*, 106 S.Ct. at 2622; *Jones*, 722 F.2d at 164. Here the magistrate expressly raised the issue in the manner contemplated by Rule 9(b) and petitioner did not discharge his burden.

Moreover, we observe that the state record indicates that Edwards took no "action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Kuhlmann*, 106 S.Ct. at 2630. Edwards' "what ring" remark seems no more significant for these purposes than the *Kuhlmann* informant's "didn't sound too good" reaction to the defendant's initial, exculpatory version of the crime in that case. *Id.* Edwards' version of these events was apparently credited by the state trial judge. There has never been any evidence—indeed there has been no claim—to the contrary.[10] Further, it is highly ques-

---

**9.** We recognize that the portion of *Kuhlmann* dealing with successive petitions had the concurrence of only four justices. However, only three justices expressed any disagreement with that portion of the opinion. Justices White and Blackmun simply expressed no opinion, one way or the other, on the subject. We have, in effect, a four-to-three division, and we are inclined to follow the four. Further, Justice Stephens, although he dissented in *Kuhlmann*, nevertheless expressed the view that "the District Court could have properly decided that a second review of the same contention was not required despite the intervening decision in the *Henry* case." *Kuhlmann*, 106 S.Ct. at 2639. Thus five justices in *Kuhlmann* would have affirmed dismissal of the petition as successive. Here the magistrate's recommendation—although it also reached the merits and decided them adversely to McDonald—was that there be dismissal under Rule 9(b), and the district court in all respects approved the recommendation.

We likewise recognize that paragraphs 22 through 25 of the magistrate's conclusions do not in express terms relate to the Fifth Amend-

ment-*Miranda* aspect of ground one of McDonald's present petition. However, taking the magistrate's report as a whole, including its references to grounds one and two of his prior petition and to McDonald's response to the Rule 9(b) notice in which he in substance admitted that the Fifth Amendment-*Miranda* part of his ground one was subject to dismissal as a successive petition under Rule 9(b), and in light of the magistrate's earlier invocation of Rule 9(b) on the basis that ground one as a whole was successive, it is obvious that the magistrate was recommending that the entirety of ground one be dismissed as successive under Rule 9(b), and that he expressly discussed the Sixth Amendment portion of ground one simply because that was the only portion of that ground as to which McDonald had attempted to give any reason why Rule 9(b) dismissal for successiveness was inappropriate.

**10.** McDonald's claim is that he never said *anything* incriminating to Edwards, and that Edwards' testimony as to what McDonald said was a complete fabrication.

tionable that McDonald's Sixth Amendment right to counsel arose prior to both preliminary examination and formal charge, notwithstanding "the existence of an attorney-client relationship" with Cuccia when McDonald talked to Edwards. *See Moran v. Burbine,* — U.S. ——, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). Finally, McDonald is in substance asking that his state conviction be set aside on account of his constitutional rights having been infringed by the occurrence of something (his making of incriminating statements to Edwards) which he claims never happened. These circumstances reinforce our conclusion that the ends of justice are not disserved by dismissal of ground one of McDonald's petition under Rule 9(b).

### EDWARDS' RECANTATION

 Ground two of McDonald's petition complains of the state trial court's having denied McDonald's motion for new trial based on Edwards' recantation of his trial testimony. This ground was wholly omitted from McDonald's prior petition— though he clearly knew of it—but the magistrate did not recommend dismissal for abuse of the writ on this ground, preferring not to reach that issue. Instead, the magistrate recommended denial on the merits. We, too, elect not to reach the abuse of the writ issue on ground two. It does, after all, closely relate to the issue of guilt or innocence. However, we hold that relief on ground two was properly denied. The state trial court afforded McDonald an unquestionably full and fair evidentiary hearing on his motion for new trial on this precise ground, at which McDonald was represented by counsel and Edwards testified. The trial court denied the motion, obviously disbelieving Edwards' recantation. *See Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 849–51, 74 L.Ed.2d 646 (1983). The Louisiana Supreme Court specifically considered and affirmed that decision on appeal. *McDonald,* 387 So.2d at 1122. *See Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). This ground does not entitle McDonald to federal habeas relief or to a federal habeas

evidentiary hearing. *See Armstead v. Maggio,* 720 F.2d 894, 896–97 (5th Cir. 1983).

Accordingly, the dismissal of McDonald's habeas petition is affirmed.

AFFIRMED.